[No. 12336–3–II.   Division Two.   March 29, 1990.]

ADULT ENTERTAINMENT CENTER, INC., ET AL, *Appellants*, v.
PIERCE COUNTY, ET AL, *Respondents*.

436

*Jack R. Burns* and *Burns & Hammerly, P.S.,* for appellants.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondents.

PETRICH, J.—This case represents a challenge to the constitutionality of a Pierce County ordinance requiring the licensing of businesses that offer customers the opportunity to view selected videos via panoram machines. The appellants are Adult Entertainment Center, Inc. (AEC), Eldoro Distributing, Inc., and Preview Books, Inc., corporations that operate businesses dealing in various forms of sex–related entertainment, and Gerald Holt, president and majority shareholder of AEC. All of appellants' businesses provide panoram machines which, for a fee, play videotapes exhibiting explicit sexual activity. The machines are located in booths furnished with full–length and sometimes lockable doors.

Effective August 26, 1986, the Pierce County Council established licensing provisions for panorams, adding chapter 5.16 to the county code. This ordinance requires premises, owner's, and device licenses, and sets fees of $500 per year for the premises license, $800 per year for the owner's license, and $30 per year for each panoram device. In addition, it provides for inspections of the premises, establishes qualifications for licensees, including criteria which permit denial based on criminal records, and requires that the premises conform to certain specifications, concerning the level of illumination and the visibility of panoram booth interiors.

AEC, Holt, Eldoro and Preview initiated this suit on August 26, 1986, challenging the constitutionality of the entire ordinance and seeking a preliminary injunction. The trial court denied the motion for injunction and decided the

substantive issues via summary judgment. It found all provisions of the code to be constitutional, except section 5.16-.090(A)(3), pertaining to the restrictions on licenses for convicted felons.

Holt and the three corporations appeal raising issues pertaining to the constitutionality of the open booth requirement, the reasonableness of the license fees, and the adequacy of the ordinance's procedural safeguards. They also contend that the trial court should have awarded them attorney's fees pursuant to 42 U.S.C. § 1983 and § 1988 because they were prevailing parties. We affirm the trial court's decision and lift the temporary stay of enforcement previously granted by this court.

Appellants first contend that the open booth requirement constitutes an impermissible burden on free speech because the County has demonstrated no compelling governmental interest to be served by the regulation.[1] We disagree.

■■ Article 1, section 5 of Washington's State Constitution guarantees that "every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right." However, a government may impose reasonable time, place, and manner restrictions upon all expression, whether written, oral, or symbolized by conduct. Such restrictions are valid if they are (1) content neutral, (2) narrowly tailored to serve a compelling state interest, and (3) leave ample alternative channels of communication. *Bering v. Share,* 106 Wn.2d 212, 234, 721 P.2d 918 (1986), *cert. dismissed,* 479 U.S. 1050 (1987). Regulations which pertain only to the arrangement of the interior of panoram booths and the conditions of the premises

---

[1]Section 5.16.120(A) of the Pierce County Code states:

**"Premises regulations.**

"The Auditor shall not license any panoram premises which do not conform to the following requirements, and shall revoke or suspend the license of any panoram premises, and the license of any operator thereof, which do not maintain conformity with the following requirements:

"A. The interior of every panoram station shall be visible from a continuous main aisle and shall not be obscured by any curtain, door, wall, or other enclosure."

involve no subject matter restraint. *See Bitts, Inc. v. Seattle,* 86 Wn.2d 395, 399, 544 P.2d 1242 (1976). To constitute a compelling interest, the purpose must be a fundamental one and the legislation must bear a reasonable relation to the achievement of the purpose. *See Bates v. Little Rock,* 361 U.S. 516, 4 L. Ed. 2d 480, 486–87, 80 S. Ct. 412 (1960). However, the necessity for the legislation need not be proven absolutely. Governments have broad latitude in experimenting with possible solutions to problems of vital local concern. *Whalen v. Roe,* 429 U.S. 589, 51 L. Ed. 2d 64, 72–73, 97 S. Ct. 869 (1977). *See also Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 37 L. Ed. 2d 446, 459, 93 S. Ct. 2628 (1973), in which the court held that although there was no conclusive proof of a connection between antisocial behavior and obscene material, the Legislature could quite reasonably determine that such a connection does or might exist; and *State v. Smith,* 93 Wn.2d 329, 337, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980), holding that the court may not substitute its judgment for that of the Legislature regarding the necessity of a law.

Evidence material to the County's purpose included affidavits from two members of the Pierce County Sheriff's Department, stating that deposits of semen observed frequently in the panoram booths indicated that sexual activity occurred there on a regular basis; and the deposition testimony of Lieutenant Gary Smith, head of the department's special investigative unit, that masturbation occurred often in the booths, and there was some homosexual activity as well. Additionally, a number of private citizens, among them members of the Pierce County Pornography Task Force, spoke at the public hearing. They told the council that there were semen stains on the walls, that floors and doorknobs in some booths were sticky with what they believed was semen, that the booths were sometimes occupied by more than one person at a time, and that they believed some of these patrons were minors. One man reported that he had been approached twice by persons outside the booths who wanted to accompany him inside.

He said one man had a handful of quarters and offered to pay for the videos if he could perform sexual acts on the witness. He also said that someone had tried to enter his booth while he was watching the videos.

Appellants did not dispute this evidence,[2] but they presented the deposition testimony of Jack Jourdan, Director of the Sexually Transmitted Disease Unit of the Tacoma Pierce County Health Department. Jourdan said that semen is a risk factor, especially for AIDS, and also for other kinds of viral infection, if it is directly contacted; *i.e.*, placed inside a rectum, a mouth, a vagina, or an open wound. On environmental surfaces, it is not a risk factor for sexually transmitted diseases, he said, because the organisms do not survive outside the body for more than a few seconds.

Because this issue was resolved below by summary judgment, we must view all of this evidence in the light most favorable to appellants. *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). Nevertheless, undisputed evidence showed that more than one person sometimes occupied a booth at the same time, that sexual activity was solicited on the premises and did occur in the booths, and that such activity created unsanitary conditions. From this evidence, the council could properly infer that the operation of the panoram machines presented a health hazard, at least in those instances in which there was 2–party sexual activity in the booths, that the conditions of the booths was offensive to decency, and that solicitation outside the booths was a dangerous activity, possessing the potential for violence.

This is more than enough to justify the County's intervention. *See Wall Distribs., Inc. v. Newport News, Va.,* 782 F.2d 1165 (4th Cir. 1986) (similar ordinance justified by the

---

[2]The only evidence offered which might rebut any of that cited above was the statement by Smith that he knew of no illegal sexual activity in the booths (explained to mean nonconsensual activity), and the testimony by one of appellants' employees that he always checked the ages of potential patrons.

reasonable determination that it would prevent masturbation and its related unsanitary conditions and other activities offensive to decency that demonstrably accompany furtive viewings of sexually explicit materials); *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243 (9th Cir. 1982) (similar ordinance upheld for the reasons expressed in *EWAP, Inc. v. Los Angeles, infra*); *EWAP, Inc. v. Los Angeles,* 97 Cal. App. 3d 179, 158 Cal. Rptr. 579 (1979) (similar ordinance justified by interest in preventing the kind of dangerous or unlawful conditions, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed).

■ The preservation of the public health and safety is one of the chief objects of local government. *State v. Mountain Timber Co.,* 75 Wash. 581, 586–87, 135 P. 645 (1913), *aff'd,* 243 U.S. 219, 61 L. Ed. 685, 37 S. Ct. 260 (1916). It clearly constitutes a fundamental purpose. The ordinance is also designed to deal with the problems identified. We agree with the court in *Wall Distribs., Inc. v. Newport News, Va.,* 782 F.2d at 1170, that the open booth requirement is the least burdensome means of controlling offensive, dangerous, and illegal activity within the panoram booths. It does not affect the content of what is shown; it does not restrict the time of operation or the number of booths; and it does not subject patrons to disruptive inspections. It does not affect the content of what is shown; it does not restrict the time of operation or the number of booths; and it does not subject patrons to disruptive inspections. The partial doors suggested by appellants would not be as effective in preventing sexual activity and other dangerous conduct.

■ We also reject the argument that the ordinance should be invalidated because of the personal motives of certain council members. It is a familiar principle of constitutional law that the court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. *United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 683, 88 S. Ct. 1673 (1968).

Appellants next contend that the open booth requirement constitutes an invasion of their customers' privacy because it prevents them from watching the panoram videos with anonymity. This issue may not be raised by the appellant corporations on behalf of their customers. One who attacks the constitutionality of an act must show that its enforcement operates as an infringement on *his* constitutional rights. *Citizens Coun. Against Crime v. Bjork,* 84 Wn.2d 891, 893, 529 P.2d 1072 (1975). However, inasmuch as Gerald Holt is named in the complaint, not only as president of AEC, but as a patron of its panoram booths, we will address the question.

The privacy right encompasses interests in autonomy and confidentiality. Legislation intrudes on an individual's autonomy interest only if it affects his ability to make crucial decisions concerning matters relating to marriage, procreation, contraception, family relations, and child rearing and education. *Bedford v. Sugarman,* 112 Wn.2d 500, 513–14, 772 P.2d 486 (1989). Clearly, the watching of sexually explicit videos is not one of those fundamental matters.

The interest in confidentiality includes the right not to expose intimate parts of the body to public view. *Bedford v. Sugarman,* 112 Wn.2d at 512.[3] However, the interest does not include the right to engage in sexual activity in a public place. *See Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d at 1278. Neither is there any privacy claim with respect to those aspects of personality, appearance, and behavior that would ordinarily be exposed in public. *Bedford v. Sugarman, supra.* Sexually explicit material has

---

[3]Thus, *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 677 P.2d 140, 687 P.2d 1152 (1984), upon which appellants rely, is inapposite. That case involved the requirement of viewing portals in internal doors of massage businesses. Massage can involve the exposure of parts of the body not ordinarily open to public view. Additionally, the court held that massages (unlike the viewing of adult movies) were traditionally carried on in private, and that the activity was encompassed by the interest in caring for one's health. The freedom to care for one's health and person falls within the purview of the privacy right. *In re Colyer,* 99 Wn.2d 114, 119–20, 660 P.2d 738 (1983).

traditionally been viewed in public theaters. There is no reason why those who choose to view it in other public establishments should expect any greater degree of anonymity.[4]

Likewise without merit is the challenge to the validity of section 5.16.060(A) of the code, which sets the amounts of the various license fees. Appellants contend that the fees are unconstitutional because they exceed the expenses of enforcing the ordinance. However, they did not produce sufficient evidence on this issue to withstand the County's motion for summary judgment.

■ The commercial exploitation of material protected by the First Amendment may properly be subject to a licensing fee. However, the fee must be a regulatory measure reasonably related to costs of administration and enforcement of the statute. *See Murdock v. Pennsylvania,* 319 U.S. 105, 319 U.S. 166, 87 L. Ed. 1292, 1299, 87 L. Ed. 1330, 63 S. Ct. 870, 63 S. Ct. 882, 63 S. Ct. 891, 146 A.L.R. 81 (1943); *BSA, Inc. v. King Cy.,* 804 F.2d 1104, 1109 (9th Cir. 1986); *Baldwin v. Redwood City,* 540 F.2d 1360, 1371 (9th Cir. 1976). As those costs of regulation must be prescribed in advance, they must of necessity be based upon estimates which it is the right and duty of the licensing authorities to make. *Seattle v. Barto,* 31 Wash. 141, 146, 71 P. 735 (1903).

The County presented evidence compiled by a fiscal analyst employed by the Council, that indicated that administrative and enforcement costs would total $2,118.43 per year for each of the four establishments in the county. That was approximately $250 to $930 more than the fees charged in each case. Appellants contend that the estimated costs for the Fire and Sheriff's Departments are exorbitant because the time involved has been greatly exaggerated. They contend that the amount of time required by the

---

[4]In fact, the confidentiality appellants seek to protect is largely illusory, since customers must expose themselves to public scrutiny as they enter and leave the booths.

Sheriff's Department is 5½ hours per year, rather than the 60 indicated by the County's analysis, and that the Fire Department would need only 45 minutes as opposed to 4 hours. They purport to base this speculation on the deposition testimony of Lt. Smith and Assistant Fire Marshal Robert Skaggs. That testimony does not provide any support for their position. Smith said that the businesses would be visited every week by undercover officers, in order to ensure that compliance with the ordinance existed on a 24–hour basis, and less often by uniformed officers.[5] Assuming, as appellants do, that the uniformed officers will visit no more often than once a month, that means the Sheriff's Department will conduct a total of 64 visits a year, in addition to the initial inspection, and time will also be needed to process the multiple applications for each business and to write the required reports. Sixty hours is not excessive under the circumstances. As to the Fire Department's time, Skaggs said that each inspection would take from 30 minutes to 1.76 hours. That time combined with the time needed for processing applications and writing a report could reasonably be expected to amount to 4 hours.

In order to withstand the motion for summary judgment, appellants had to present *specific facts,* showing there was a genuine issue for trial. *Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 13, 721 P.2d 1 (1986). They did not do so, and the trial court properly decided the issue on the basis of the County's evidence.

Appellants next contend that the time limits provided for decisions on applications and appeals are inadequate. Licensing ordinances must provide that the licensor will, within a specified brief period, either issue a license or go to court. *See Riley v. National Fed'n of the Blind of*

---

[5]Appellants suggest that the undercover inspections are only for the purpose of enforcing the obscenity laws because the officers view the videos while they are on the premises. However, Smith explained that monitoring the films was only part of the inspection. He said that the officers also tried to get "a flavor or taste of what's going on in the establishments" and to make sure that they were in compliance with the licensing ordinance.

*N.C., Inc.,* 487 U.S. 781, 101 L. Ed. 2d 669, 693, 108 S. Ct. 2667 (1988). PCC 5.16.090(B) requires the auditor to make a decision with regard to applications within 30 days. Given the fact that five departments must review each application, that a substantial amount of information on the forms must be checked and evaluated, and that at least two on-site inspections must be made, we find that 30 days is not an unreasonable period of time.[6]

Although they did not raise the issue below, appellants now claim that subsection 5.16.110(B) is constitutionally infirm because it does not provide a limit to the amount of time permitted the hearing examiner in which to act on an appeal from the denial of a license. We note that the courts have imposed a requirement of "prompt judicial review" where government action imposes a prior restraint on First Amendment rights. *See Freedman v. Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649, 655, 85 S. Ct. 734 (1965); *Seattle v. Bittner,* 81 Wn.2d 747, 757, 505 P.2d 126 (1973). A licensing requirement constitutes a prior restraint. *Seattle v. Bittner,* 81 Wn.2d at 755; *D.C.R. Entertainment, Inc. v. Pierce Cy.,* 55 Wn. App. 505, 511–12, 778 P.2d 1060 (1989).

However, we decline to rule on the constitutionality of subsection 5.16.110(B) because the appellants have not shown any prejudice stemming from that provision. They admit that their businesses were not in compliance with the ordinance. There was, therefore, no basis upon which the hearing examiner could require that licenses be issued. Appellants' proper recourse was to the courts, where they ultimately sought declaratory judgment. Enforcement of the ordinance has been stayed pending resolution of the

---

[6]We find *Kev, Inc. v. Kitsap Cy.,* 793 F.2d 1053 (9th Cir. 1986), upon which appellants rely, easily distinguishable. That court struck down a provision allowing 5 days between application and issuance of an exotic dancer's license. However, that ordinance provided that the licenses would issue automatically. Since the requirement was merely a means of collecting information, and no discretion was involved, there was no need for the delay between the application and the issuance of the license.

matter, and appellants have been free to operate their businesses without the requisite licenses. Courts cannot pass on the question of the constitutionality of a statute abstractly, but only as it applies and is sought to be enforced by the government in a particular case before the court. *Kitsap Cy. v. Bremerton,* 46 Wn.2d 362, 367, 281 P.2d 841 (1955).

Finally, appellants assign error to the denial of their request for attorney's fees under 42 U.S.C. § 1983 and § 1988. Section 1988 permits the court, in its discretion, to award attorney's fees to the party who prevails in a suit to enforce § 1983.[7]

---

[7]We seriously doubt that the appellant corporations can bring an action under § 1983, which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any *citizen* of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Italics ours.)

The Sixth Circuit has held that since corporations, both public and private, are not citizens within the meaning of the Fourteenth Amendment, they can never assert the denial of privileges and immunities under 42 U.S.C. § 1983. *See South Macomb Disposal Auth. v. Washington,* 790 F.2d 500, 503–04 (6th Cir. 1986). The support for this proposition is well established by a long line of cases in which the Supreme Court has held that corporations cannot claim the protection of the privileges and immunities clause of the Fourteenth Amendment. *See Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 68 L. Ed. 2d 514, 522–23, 101 S. Ct. 2070 (1981); *Asbury Hosp. v. Cass Cy.,* 326 U.S. 207, 90 L. Ed. 6, 66 S. Ct. 61 (1945); *Hague v. Committee for Indus. Org.,* 307 U.S. 496, 83 L. Ed. 1423, 1436, 59 S. Ct. 954 (1939); *Selover Bates & Co. v. Walsh,* 226 U.S. 112, 57 L. Ed. 146, 152, 33 S. Ct. 69 (1912); *Western Turf Ass'n v. Greenberg,* 204 U.S. 359, 51 L. Ed. 520, 522, 27 S. Ct. 384 (1907); *Orient Ins. Co. v. Daggs,* 172 U.S. 557, 43 L. Ed. 552, 554, 19 S. Ct. 281 (1899); *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania,* 125 U.S. 181, 31 L. Ed. 650, 653, 8 S. Ct. 737 (1888). *Cf. NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 415, 83 S. Ct. 328 (1963); *Louisiana ex rel. Gremillion v. NAACP,* 366 U.S. 293, 6 L. Ed. 2d 301, 304, 81 S. Ct. 1333 (1961); *Grosjean v. American Press Co.,* 297 U.S. 233, 80 L. Ed. 660, 666–67, 56 S. Ct. 444 (1936), apparently basing the corporations' standing on the due process and equal protection clauses.

The trial court correctly concluded that the appellants were not prevailing parties in this case. In order to prevail under 42 U.S.C. § 1988, a party must succeed on a significant issue which achieves some of the benefit the parties sought in bringing the suit. *Hensley v. Eckerhart,* 461 U.S. 424, 76 L. Ed. 2d 40, 50, 103 S. Ct. 1933 (1983). Appellants' success in this case was extremely limited. They originally challenged the open booth requirement, the license qualifications, the discretion permitted the auditor and the appeal provisions, the amount of the fees, and the validity of the entire ordinance under equal protection analysis. They succeeded only in eliminating the crime–related prohibitions. That is not enough to make them prevailing parties within the contemplation of the statute. *See BSA, Inc. v. King Cy.,* 804 F.2d 1104, 1112 (9th Cir. 1986).[8]

The judgment is affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.

Review denied at 115 Wn.2d 1006 (1990).

---

[8]*BSA* challenged an ordinance regulating nude dancing. It succeeded only in having invalidated provisions excluding 18– to 21–year–olds from adult entertainment studios and prohibiting the issuance of licenses to convicted felons. The court held that this limited success was not enough to require a finding that *BSA* was a prevailing party.