[645 NYS2d 951]

TIME SQUARE BOOKS, INC., Doing Business as TIME SQUARE BOOKS, et al., Appellants, v CITY OF ROCHESTER et al., Respondents.

Fourth Department, July 12, 1996

## APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, L. L. P.,* Buffalo *(Paul Cambria, Jr., William M. Feigenbaum* and *Cherie L. Peterson* of counsel), for appellants.

*Linda S. Kingsley, Corporation Counsel* of City of Rochester *(Jeffrey Eichner* of counsel), for respondents.

## OPINION OF THE COURT

GREEN, J. P.

Defendant City of Rochester (City) amended its Municipal Code to regulate public entertainment establishments providing booths for the private viewing of motion pictures or "adult entertainment."* Effective February 1, 1996, the ordinance provides:

"No person shall own, operate, manage or control, or cause or permit the establishment, operation or use of a booth provided or used for the private viewing of motion pictures or adult entertainment unless the booth is physically constructed and arranged in such a manner that the entire interior portion of the booth is clearly visible to persons in an adjacent public area of the premises. Visibility into such booths shall not be blocked or obscured by doors, curtains, partitions, drapes, or any other obstruction whatsoever. * * * All such booths shall be separated from adjacent booths and any non-public areas by a wall. All such walls shall be solid and without any openings, [and] shall extend from the floor to a height of not less than six (6) feet * * *. Windows may be provided in the walls for viewing live entertainment as long as the windows are solid and cannot be opened to allow for contact between the patron and entertainer. * * *

"No person shall allow or permit the use of a booth provided or used for the private viewing of motion pictures or adult

---

* "Adult entertainment" is defined in section 29-1 of the Municipal Code as "[a]ny motion picture or public entertainment which is characterized by emphasis on the description or depiction of specific anatomical areas or specified sexual activities as defined in [s]ection 115-13 of the Municipal Code."

entertainment to be occupied by more than one person at a time, nor shall more than one person occupy any such booth at a time" (Municipal Code of City of Rochester § 29-15 [I] [2], [3]).

Those amendments were prompted by the City's concern with the spread of AIDS and other sexually transmitted diseases. The regulations governing the operation and use of booths were enacted by the City Council "to assure that entertainment centers are not used in a manner that can facilitate the transmission of such diseases through high-risk sexual contact with multiple partners" (Municipal Code of City of Rochester § 29-15 [I] [1]). The Council found that closed booths are used by patrons of adult entertainment centers for sexual activity and that the presence of doors or other obstructions on those booths encourages such activity and thereby facilitates the transmission of disease (Municipal Code of City of Rochester § 29-15 [I] [1] [b], [c]).

Plaintiffs, owners of retail stores selling books and video tapes, previously offered enclosed booths for the private screening of sexually explicit motion pictures. Prior to the effective date of the ordinance, plaintiffs commenced the instant action, challenging that part of the amended ordinance requiring open booths. Plaintiffs seek judgment declaring that the open booth requirement violates the free speech guarantees of the State and Federal Constitutions. Plaintiffs also seek judgment permanently enjoining the City from enforcing that portion of the ordinance. Plaintiffs moved for a preliminary injunction against the enforcement of the open booth requirement during the pendency of the action. Supreme Court denied plaintiffs' motion and this appeal ensued.

CPLR 6301 authorizes a preliminary injunction to be granted in any action where a permanent injunction is sought. To be entitled to a preliminary injunction, plaintiffs were required to demonstrate (1) the likelihood of ultimate success on the merits; (2) irreparable injury if the preliminary injunction is not granted; and (3) a balancing of the equities in their favor (*see, Niagara Recycling v Town of Niagara*, 83 AD2d 316, 324; *Gambar Enters. v Kelly Servs.*, 69 AD2d 297, 306). In denying plaintiffs' motion for a preliminary injunction, the court determined that plaintiffs failed to establish a likelihood of success on the merits of their constitutional challenges to the ordinances. From that determination, the conclusion followed that plaintiffs also failed to demonstrate irreparable injury or a balancing of the equities in their favor.

In our view, plaintiffs made a sufficient showing to warrant preliminary injunctive relief. Our analysis begins with the

premise that the sexually explicit but nonobscene entertainment displayed in booths at plaintiffs' establishments is a protected form of expression under the First Amendment of the Federal Constitution *(see, Barnes v Glen Theatre,* 501 US 560; *Schad v Mount Ephraim,* 452 US 61, 66; *City of New York v S&H Book Shop,* 41 AD2d 637) and article I (§ 8) of the State Constitution *(see, Matter of Town of Islip v Caviglia,* 73 NY2d 544, 556; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553, 557; *Bellanca v New York State Liq. Auth.,* 54 NY2d 228, 234-235, *cert denied* 456 US 1006).* There is no dispute that the amended ordinance implicates both constitutional guarantees in its regulation of plaintiffs' presentation of that expression. Plaintiffs' ultimate success on the merits, however, clearly hinges upon the level of protection afforded by the State Constitution. Legislative enactments similar to the amended Rochester ordinance, requiring that booths used for viewing adult entertainment be open, have thus far withstood every challenge made under the Federal Constitution *(see, Matney v County of Kenosha,* 887 F Supp 1235, *affd* 86 F3d 692 [7th Cir]; *Spokane Arcade v City of Spokane,* 75 F3d 663 [9th Cir]; *TK'S Video v Denton County,* 24 F3d 705 [5th Cir]; *Mitchell v Commission on Adult Entertainment Establishments,* 10 F3d 123 [3d Cir]; *Bamon Corp. v City of Dayton,* 923 F2d 470 [6th Cir]; *Postscript Enters. v City of Bridgeton,* 905 F2d 223 [8th Cir]; *Singer v Town of E. Hartford,* 901 F2d 297 [2d Cir]; *Doe v City of Minneapolis,* 898 F2d 612 [8th Cir]; *Berg v Health & Hosp. Corp.,* 865 F2d 797 [7th Cir]; *Wall Distribs. v City of Newport News,* 782 F2d 1165 [4th Cir]; *Ellwest Stereo Theatres v Wenner,* 681 F2d 1243 [9th Cir]; *Libra Books v City of Milwaukee,* 818 F Supp 263 [ED Wis]; *Movie & Video World v Board of County Commrs.,* 723 F Supp 695 [SD Fla]; *Ellwest Stereo Theater v Boner,* 718 F Supp 1553 [MD Tenn]; *Suburban Video v City of Delafield,* 694 F Supp 585 [ED Wis]; *Broadway Books v Roberts,* 642 F Supp 486 [ED Tenn]; *see also, Deluxe Theater & Bookstore v City of San Diego,* 175 Cal App 3d 980, 221 Cal Rptr 100; *County of Sacramento v Superior Ct.,* 137 Cal App 3d 448, 187 Cal Rptr 154; *DeMott v Board of Police Commrs.,* 122 Cal App 3d 296, 175 Cal Rptr 789; *EWAP, Inc. v City of Los Angeles,* 97 Cal App 3d 179, 158 Cal Rptr 579; *City of Colorado Springs v 2354 Inc.,* 896 P2d 272 [Colo]; *City of Ramsey v Amusement Ctr.,* 498 NW2d 25 [Minn App]; *City of Lincoln v ABC Books,* 238 Neb 378, 470 NW2d 760; *City of Cleveland v Fisher,* 62 Ohio Misc 2d 792, 611 NE2d 1016; *Commonwealth ex rel. Preate v Danny's New Adam & Eve Bookstore,* 155 Pa

Commw 281, 625 A2d 119; *Martinez v State*, 744 SW2d 224 [Tex App]; *Adult Entertainment Ctr. v Pierce County*, 57 Wash App 435, 788 P2d 1102, *review denied* 115 Wash 2d 1006, 796 P2d 725; *City News & Novelty v City of Waukesha*, 170 Wis 2d 14, 487 NW2d 316, *review denied* 491 NW2d 768).

Nevertheless, the courts of this State have emphasized that the Federal Constitution fixes only minimum standards and that "matters of free expression in books, movies and the arts generally, are particularly suited to resolution as a matter of State common law and State constitutional law" (*Immuno AG. v Moor-Jankowski*, 77 NY2d 235, 248, *cert denied* 500 US 954; *see, O'Neill v Oakgrove Constr.*, 71 NY2d 521, 531 [Kaye, J., concurring], *mot to amend remittitur denied* 72 NY2d 910; *People ex rel. Arcara v Cloud Books, supra,* at 557-558). "It is often forgotten that diversity is the essence of federalism and that the Federal Constitution only guarantees minimum protections, leaving to the States the task of affording additional or greater rights under their Constitutions, tailored to the special needs and traditions of the various States (*People v Adams*, 53 NY2d 241, 250). There is probably no area in which State attitudes are more diverse, and thus where independent State constitutional rights serve their intended purposes, than in the area dealing with freedom of expression (e.g., *Miller v California*, 413 US 15)" (*Matter of Beach v Shanley*, 62 NY2d 241, 255 [Wachtler, J., concurring]).

Historically, New York has assumed a preeminent position in the Federal system through its tradition of providing "a hospitable climate for the free exchange of ideas" (*Immuno AG. v Moor-Jankowski, supra,* at 249). That tradition of protecting free expression includes "tolerance of the unconventional and of what may appear bizarre or even offensive" (*People v Scott*, 79 NY2d 474, 488). Indeed, "New York is a State where freedom of expression and experimentation has not only been tolerated, but encouraged" (*People v P. J. Video,* 68 NY2d 296, 309, *cert denied* 479 US 1091).

That historical and cultural tradition of fostering free expression is embodied in the broad guarantee of article I (§ 8) of the New York State Constitution: "Every citizen may freely speak, write and publish his sentiments on all subjects * * * and no law shall be passed to restrain or abridge the liberty of speech or of the press." That expansive language further supports the conclusion that "[t]he protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the First Amendment"

(*O'Neill v Oakgrove Constr., supra*, at 529, n 3, citing *People ex rel. Arcara v Cloud Books, supra*, at 557-558; *Matter of Beach v Shanley, supra*, at 255 [Wachtler, J., concurring]; *Bellanca v New York State Liq. Auth., supra*, at 235; *see, Immuno AG. v Moor-Jankowski, supra*, at 248-249). We conclude that plaintiffs, relying upon the broad degree of protection afforded free expression by our State Constitution, have made a prima facie showing of their right to relief sufficient to warrant the issuance of a preliminary injunction (*see, Tucker v Toia*, 54 AD2d 322, 326).

Under the State Constitution, like the Federal Constitution, government regulation of speech that is aimed at the message conveyed must clear a high hurdle to withstand challenge. "Generally speaking, if the regulation is content-based it is presumptively invalid and therefore subject to strict scrutiny" (*Matter of Town of Islip v Caviglia, supra*, at 556). Plaintiffs contend that Rochester's amended ordinance is a presumptively invalid content-based restriction because it singles out "adult entertainment" for regulation. We need not reach that issue because plaintiffs have established the likelihood of their right to relief under the less exacting standard applied to regulations burdening speech only incidentally. That standard is set forth in *People ex rel. Arcara v Cloud Books (supra*, at 558; *see, Matter of Town of Islip v Caviglia, supra*, at 558; *City of New York v Capri Cinema*, 169 Misc 2d 18; *City of New York v Dana*, 165 Misc 2d 409, 414).

In *Arcara,* the Erie County District Attorney attempted to close a bookstore as a public nuisance pursuant to the Public Health Law. A Deputy Sheriff working as an undercover investigator personally observed patrons of that bookstore engaged in masturbation and fellatio and was himself solicited by prostitutes on the premises. The owner was aware that the bookstore was being used for illegal sexual activity but did nothing to prevent it. The District Attorney chose not to arrest or prosecute the offending customers or to obtain an injunction against the illegal activity, but instead applied for an order closing the bookstore for a year. The Supreme Court held that the District Attorney's action was directed solely at illicit conduct and did not trigger the protection of the First Amendment of the Federal Constitution (*Arcara v Cloud Books*, 478 US 697). The Court of Appeals, however, reached beyond "the minimal national standard established by the Supreme Court" (*People ex rel. Arcara v Cloud Books, supra*, at 557-558) and held that closure of the bookstore implicated the guarantee of

free expression under the State Constitution. The Court further held that, while a bookstore is not exempt from regulations protecting the public health and safety, "when government regulation designed to carry out a legitimate and important State objective would incidentally burden free expression, the government's action cannot be sustained unless the State can prove that it is *no broader than needed to achieve its purpose*" (*People ex rel. Arcara v Cloud Books, supra*, at 558 [emphasis added]).

Defendants have failed to demonstrate that the open booth requirement of the amended ordinance is no broader than necessary to accomplish their legitimate objective of preventing the transmission of AIDS and other sexually transmitted diseases "through high-risk sexual contact with multiple partners" (Municipal Code of City of Rochester § 29-15 [I] [1]). Less restrictive alternatives, including enforcement of the newly enacted requirements of solid walls and one person per booth, are available to serve that objective. In addition, plaintiffs have agreed to remove two feet from the bottom of booth doors to facilitate enforcement of the mandate of one person per booth. Defendants have offered no evidence suggesting that those less restrictive alternatives would be any less effective in meeting their objective than opening the booths to public view.

We are mindful that the open booth requirement imposed by the City has a less drastic impact upon free expression than the closure of the bookstore in *Arcara*. Nothing in *Arcara* suggests, however, that the State constitutional standard that a restriction on free expression be "no broader than necessary to accomplish [the City's] purpose" is limited to closures (*People ex rel. Arcara v Cloud Books, supra*, at 559). Rather, that standard is triggered simply by the question "whether the [City] went too far and enacted an ordinance that had an impermissible incidental effect abridging free expression" (*Matter of Town of Islip v Caviglia, supra*, at 558).

Further, while the level of governmental intrusion was greater in *Arcara* than in this case, the underlying basis for the impermissible intrusion was also greater. Unlike *Arcara*, the record in the instant case contains little evidence that "high-risk sexual contact" has occurred in closed booths in plaintiffs' establishments and thereby threatened the public health (Municipal Code of City of Rochester § 29-15 [I] [1]; *see*, 10 NYCRR subpart 24-2 [establishments making facilities available for anal intercourse, vaginal intercourse or fellatio

constitute a threat to the public health]). Defendants' only proof that such sexual contact has occurred there is the affidavit of a Zoning Enforcement Officer, who asserted that she inspected plaintiffs' businesses and observed used condoms and packets of lubricant in the booths. Unlike the investigator in *Arcara*, she observed no sexual acts or solicitation by prostitutes. Further, nothing in the record indicates that plaintiffs were aware of or condoned sexual activity on their premises.

The paucity of factual support for the City's action distinguishes this case not only from *Arcara*, but also from *Matter of Town of Islip v Caviglia (supra)*. The zoning ordinance upheld in *Caviglia* was largely the product of a study prepared on behalf of the Town of Islip, detailing the harmful effects of adult entertainment businesses on the surrounding neighborhoods and exploring how those effects could be mitigated. The Court held that "the Town's use of its zoning powers was the most appropriate means to address its substantive problems" and that the ordinance was " 'no broader than needed' for the intended purpose" (*Matter of Town of Islip v Caviglia, supra*, at 559, 560, quoting *People ex rel. Arcara v Cloud Books, supra*, at 558).

In reaching a contrary conclusion in the instant case, we do not "construe *Arcara* in absolutist terms" (*Matter of Town of Islip v Caviglia, supra*, at 559). Nor do we step outside our proper judicial role by resting our decision on "nothing more than a disagreement with the [City] over how much corrective action is wise and how best it may be achieved" (*Matter of Town of Islip v Caviglia, supra*, at 560). Rather, we follow the clear directive of *Arcara*, reaffirmed in *Caviglia*, by requiring the City to prove that, in mandating open booths for the private viewing of motion pictures or adult entertainment, "it has chosen a course no broader than necessary to accomplish its purpose" (*People ex rel. Arcara v Cloud Books, supra*, at 559).

Like the illegal sexual activity taking place in the bookstore in *Arcara,* and unlike the adverse secondary effects of adult uses on Islip's neighborhoods in *Caviglia*, the conduct defendants seek to prevent is "subject to direct attack" through injunctive relief, criminal prosecutions of persons violating the laws prohibiting prostitution, enforcement of the solid wall and one person per booth requirements of the amended ordinance and plaintiffs' voluntary offer to remove the bottom portion of booth doors (*Matter of Town of Islip v Caviglia, supra*, at 559). It is undisputed that those alternatives have not been attempted and the record contains no proof that those

alternatives would be inadequate or unavailing to achieve the City's objective (*see, People ex rel. Arcara v Cloud Books, supra,* at 559; *cf., City of New York v 777-779 Eighth Ave. Corp.,* — AD2d —, 1996 NY Slip Op 03397 [1st Dept, Apr. 16, 1996]; *City of New York v Dana, supra; City of New York v Capri Cinema, supra,* at 24-25). We conclude that, absent such proof, plaintiffs are likely to succeed on the merits of their challenge to the open booth requirement on State constitutional grounds.

We emphasize that our conclusion that plaintiffs have demonstrated a likelihood of ultimate success must not be equated with a final determination on the merits (*see, Gambar Enters. v Kelly Servs.,* 69 AD2d 297, 306-307, *supra; Tucker v Toia, supra,* at 326). Plaintiffs may not ultimately prevail in obtaining judgment declaring that the open booth requirement is unconstitutional and permanently enjoining enforcement of the challenged portions of the amended ordinances. Their position, however, "is based on substantial principles of constitutional law and involves novel issues of first impression" in this State (*Tucker v Toia, supra,* at 326). It is appropriate, therefore, to grant a preliminary injunction "to hold the parties in *status quo* while the legal issues are determined in a deliberate and judicious manner" (*Tucker v Toia, supra,* at 326).

We further conclude that plaintiffs satisfied their burden of demonstrating that they will suffer irreparable injury if the preliminary injunction is not granted. Infringement of the constitutionally guaranteed right of free expression, "for even minimal periods of time, unquestionably constitutes irreparable injury" (*Elrod v Burns,* 427 US 347, 373; *see, G & V Lounge v Michigan Liq. Control Commn.,* 23 F3d 1071, 1078 [6th Cir]; *Community Communications Co. v City of Boulder,* 660 F2d 1370, 1376 [10th Cir], *cert dismissed* 456 US 1001).

Finally, we agree with plaintiffs that a balancing of the equities weighs in their favor. Plaintiffs submitted evidence that they will sustain a significant loss of business if the open door requirement is enforced (*see, Kemo, Inc. v City of Long Beach,* 47 Misc 2d 185, 186). In addition, plaintiffs will be required to absorb the expense of altering their premises to conform to that requirement and of returning them to their original state if their action is ultimately successful (*see, Finger Lakes Health Sys. Agency v St. Joseph's Hosp.,* 81 AD2d 403, 408, *lv denied* 55 NY2d 606). Further, if plaintiffs ultimately succeed, they will have suffered irremediable loss of constitutionally protected rights.

Balanced against the probability of hardship to plaintiffs is the City's concern about the spread of sexually transmitted

diseases, particularly AIDS. The weight and legitimacy of the City's interest in stemming the AIDS epidemic are not subject to dispute. Nothing in the record, however, supports the City's position that prohibiting the private viewing of motion pictures or adult entertainment in closed booths is necessary to serve that interest.

Accordingly, the order should be reversed and plaintiffs' motion for a preliminary injunction granted.

BOEHM, J. (dissenting). I agree with the majority that sexually explicit but nonobscene material, including movies and other forms of entertainment, is a protected form of expression under the Federal and the State Constitutions. I further agree that our State furnishes broader guarantees of expression than the minimum protections afforded by the Federal Constitution (*see, Matter of Town of Islip v Caviglia,* 73 NY2d 544, 556). Because, in my view, the ordinance under attack neither offends nor involves those guarantees, except incidentally, and because the ordinance is no broader than needed to accomplish its purpose, I respectfully dissent.

Initially, I do not agree that plaintiffs have successfully raised substantial principles of constitutional law and that their challenge involves novel issues of first impression mandating the granting of a preliminary injunction. Plaintiffs have failed to produce a single case anywhere in the country, Federal or State, that supports their position. To the contrary, every case that has been called to our attention, and the majority has fully noted them, has upheld the validity of similar legislation as serving the government's substantial interest in the health, safety and welfare of the people. The unanimity of those decisions not only operates as a persuasive guide but, as the City's Corporation Counsel informs us in her affidavit, the relevant legal decisions throughout the country were provided to the City Council prior to the enactment of the ordinance. Such information was appropriate for consideration by the Council, as a municipality may rely upon court decisions of other jurisdictions and the findings summarized in those decisions for preenactment support of the legislation (*see, Renton v Playtime Theatres,* 475 US 41, 50-52, *reh denied* 475 US 1132).

The test formulated by the Supreme Court in *Renton v Playtime Theatres (supra,* at 46-48) is that where a law regulating adult entertainment is content neutral it does not affect freedom of expression, except incidentally, since it aims not at the content of the adult entertainment but at the secondary ef-

fects associated with it. "[C]ontent-neutral restrictions, those justified without reference to the content of the regulated speech and relating only to the time, place, and manner of expression, are valid if the governmental interest to be achieved outweighs the resulting interference with free expression" (*Matter of Town of Islip v Caviglia, supra,* at 556-557; *see, Ward v Rock Against Racism,* 491 US 781, 791, *reh denied* 492 US 937). Applying that standard, the restrictions imposed by the ordinance are clearly content neutral. They in no way attempt to hinder or restrict the content of the speech that plaintiffs seek to express.

The rule laid down by *Renton* permits municipalities to regulate "adult uses" that are not content based if (1) the " 'predominant purpose' " of the ordinance is not to control the content of the material but to control the "secondary effects" of such uses, (2) the ordinance as designed serves a substantial governmental interest, (3) the ordinance is narrowly tailored to affect only the substantive problem, and (4) the ordinance leaves open reasonable alternative avenues of expression (*Matter of Town of Islip v Caviglia, supra,* at 552).

The "predominant purpose" test is met by the ordinance. It was adopted because of the City Council's awareness that "the City and its surrounding area have a large incidence of sexually transmitted diseases, including AIDS. The Council wishes to assure that entertainment centers are not used in a manner that can facilitate the transmission of such diseases through high-risk sexual contact with multiple partners * * *

"[because] closed booths have been used [in adult entertainment establishments] by patrons for the purpose of engaging in sexual acts and certain booths in the City have been constructed so as to facilitate sexual activity; and * * *

"[d]oors, curtains, partitions, drapes or other obstructions in the entrances to such booths encourage patrons using such booths to engage in sexual acts therein, thereby promoting and encouraging prostitution and the commission of sexual acts which may lead to the transmission of disease between such persons or the deposit of bodily fluids on the floors and walls of such booths. Such activities could also prove detrimental to the health and safety of other persons who may come into contact with such fluids" (Municipal Code of City of Rochester § 29-15 [I] [1] [b], [c]).

In reinforcing the preenactment basis for the ordinance, the City submitted an affidavit from a Zoning Enforcement Officer, who related that she had conducted daytime inspections of

those businesses having coin- or token-operated adult entertainment, including the businesses operated by plaintiffs. She observed in a number of video booths in five of plaintiffs' bookstores "used condoms and open condom packages on the floors, in ashtrays, garbage cans and in the creases of benches in the booths. I observed a total of approximately 20 used condoms in the video booths." At most of plaintiffs' establishments she observed single-use packets of lubricant sold at or near where the video booth tokens were sold and saw approximately 40 used packets in the booths. In one location she observed four "dial-a-doll" booths. "The management described the operation of these booths for me. Prior to entering the booth, a patron would select a scantily-dressed female entertainer. The patron and the entertainer would go to a separate area of the book store where there were booths which were separated on the inside by a plexiglas partition covered by a curtain. The patron would then insert a prepurchased token and a curtain would rise. The patron could then observe the female performing on the other side of the partition. I observed a bottle of Windex and a roll of paper towels in the patron's side of the booth. The manager explained to me that the reason for the Windex and paper toweling is that patrons are responsible for cleaning up after themselves."

In addition, the Council "reviewed information justifying the enactment of ordinances in other municipalities establishing open booth requirements" (Municipal Code of City of Rochester § 29-15 [I] [1]) and, as noted, it also had the benefit of other court decisions dealing with open booth legislation.

Plaintiffs have not shown that factual support for the legislation was insufficient. Further, "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses" (*Renton v Playtime Theatres, supra*, at 51-52; *see, Barnes v Glen Theatre*, 501 US 560, 584-585 [Souter, J., concurring: "In light of *Renton's* recognition that legislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects * * * I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case"]; *see also, Postscript Enters. v City of Bridgeton*, 905 F2d 223, 226-227 [8th Cir]; *Wall Distribs. v City of Newport News*, 782 F2d 1165, 1169, n 7 [4th Cir] [adopting "legislative notice" theory]).

Significantly, plaintiffs do not challenge the provision of the Municipal Code that prohibits booths from being occupied by more than one person at a time. They also consent to the requirement of a solid wall between the booths. That concession goes further than the ordinance, which permits windows in the walls for viewing live entertainment provided the windows are solid and cannot be opened.

The "predominant purpose" of the ordinance is to promote the public welfare by maintaining sanitary conditions in areas that are frequented by members of the public, not to regulate or restrict what is viewed in those areas. For the same reason, the ordinance is designed to serve a substantial governmental interest and, therefore, meets the second test as well. That interest arises from the unsanitary conditions in the booths and the possible spread of disease by semen on the walls or floors of booths (*see, Wall Distribs. v City of Newport News, supra*, at 1169; *Movie & Video World v Board of County Commrs.*, 723 F Supp 695, 698-699; *Suburban Video v City of Delafield*, 694 F Supp 585, 590).

The ordinance is also narrowly tailored to serve the governmental objective and to affect only the uses that produce the secondary effects (*see, United States v O'Brien*, 391 US 367, 377, *reh denied* 393 US 900). It responds precisely to the substantive problem and to the legitimate concern of discouraging sexual activity of any kind that may take place inside the booths. "The ordinance does not ban the viewing of films or other entertainment, but merely regulates the environment in which the viewing occurs" (*Berg v Health & Hosp. Corp.*, 667 F Supp 639, 642, *affd* 865 F2d 797 [7th Cir]). The ordinance regulates only the "non-communicative aspects", i.e., the enclosure in which the material is viewed (*Doe v City of Minneapolis*, 693 F Supp 774, 780, *affd* 898 F2d 612 [8th Cir]).

Plaintiffs' argument that there are less restrictive means of deterring sexual activity in the booths that would not inhibit the viewers of the material is without substance. The choice of one among several legislative ways of obtaining a legitimate end is for the Legislature, not the Judiciary. Further, "it does not appear that use of * * * booths with the bottom two feet of the door removed", which plaintiffs suggest as an alternative, "would adequately accomplish the legislative goal of deterring promiscuous sexual contacts that can spread deadly disease. Doors of this kind would not inhibit sexual activity between two individuals in adjacent booths through the use of holes in the common dividing partitions, or inhibit masturbation within

the partially enclosed booths" (*Mitchell v Commission on Adult Entertainment Establishments*, 10 F3d 123, 143 [3d Cir]). As the Court of Appeals has pointed out, "[a]rguments can be advanced that different techniques should be used to address the problem * * * but that is not to say that they are constitutionally required .* * * To suggest alternative provisions amounts to nothing more than a disagreement with the [City] over how much corrective action is wise and how best it may be achieved" (*Matter of Town of Islip v Caviglia*, 73 NY2d 544, 560, *supra*).

Additionally, the ordinance is "no broader than needed" for the intended purpose (*People ex rel. Arcara v Cloud Books*, 68 NY2d 553, 558). The regulation need not be the " 'least restrictive means' " of addressing the problem as that standard is used in First Amendment analysis (*Matter of Town of Islip v Caviglia, supra*, at 559). The "least restrictive means" analysis does not apply when content-neutral time, place and manner restrictions are at issue (*see, Ward v Rock Against Racism*, 491 US 781, 796-800, *supra*). Even where a least restrictive means analysis was used, it was there held that such analysis was easily met by an open booth ordinance (*Berg v Health & Hosp. Corp.*, 865 F2d 797, 803-804, *supra*).

Patrons may still view what they desire to view in the booths, or in their homes, or in movie theaters where there is apparently no shyness on the part of patrons there to watch movies in the open view of other patrons. Nor are plaintiffs in any way restrained in their ability to sell books, movies or other forms of entertainment, so long as they comply with the ordinance. The viewing public is in no way "denied access to the market or * * * unable to satisfy its appetite for sexually explicit fare" (*Young v American Mini Theatres*, 427 US 50, 62, *reh denied* 429 US 873).

Lastly, the ordinance leaves ample alternative avenues of expression. It does not limit the number of viewing booths or the type of material that may be shown in them, and the availability of films, books or other entertainment is not impaired. The ordinance's effect on plaintiffs' revenues, if any, is not material to a First Amendment analysis (*see, Young v American Mini Theatres, supra*, at 78 [Powell, J., concurring]).

The broader degree of protection afforded to free expression by our State Constitution in no way affects the foregoing analysis. When legislation designed to carry out a legitimate governmental objective incidentally burdens free expression, the government's action may be sustained when it is shown

that it is "no broader than needed" to achieve its purpose *(People ex rel. Arcara v Cloud Books, supra,* at 558). "The crucial factor in determining whether State action affects freedom of expression is the impact of the action on the protected activity and not the nature of the activity which prompted the government to act. The test, in traditional terms, is not who it is aimed at but who is hit" *(People ex rel. Arcara v Cloud Books, supra,* at 558).

The fact that plaintiffs have shown that in one location over a two-week period there was a reduced number of viewers in open booths does not presumptively establish, at least to the extent necessary for the granting of a preliminary injunction, that the ordinance hinders patrons from viewing the entertainment provided by plaintiffs. It may equally indicate that those patrons seeking to engage in unobserved sexual activity prefer closed booths. In any case, a patron walking into one of plaintiffs' establishments, which openly offer for sale sexually explicit books, magazines and video tapes, will be observable by members of the public, who will naturally presume " 'he saith not a *pater noster*' there (Burton's Anat. of Mel. vol. 2 [1st Am. ed.], p. 446, part 3, sec. 3, mem. 1, sub. 2)" *(Kerr v Kerr,* 134 App Div 141, 142).

Because plaintiffs have not met their burden of demonstrating a likelihood of ultimate success and because the balancing of the equities does not weigh in their favor, I would affirm the order of Supreme Court denying plaintiffs' motion for a preliminary injunction.

FALLON and DOERR, JJ., concur with GREEN, J. P.; BOEHM, J., dissents and votes to affirm in a separate opinion in which LAWTON, J., concurs.

Order reversed, on the law, with costs, and motion granted.