OPINION OF THE COURT
Ann E. Pfeiffer, J.
*292 Defendant is charged with aggressive panhandling pursuant to Rochester City Code § 44-4 (H) which states: “No person on a sidewalk or alongside a roadway shall solicit from any occupant of a motor vehicle that is on a street or other public place.” According to the appearance ticket issued in this case, defendant walked into traffic on the inner loop exit ramp to Main Street, and solicited money from motorists.
I. Introduction
Defendant argues that the ordinance under which he was charged violates the First Amendment of the United States Constitution and article I, § 8 of the New York Constitution because it effectively prohibits any solicitous speech on the streets of the City of Rochester, regardless of the impact, directed toward the occupant of a motor vehicle. Specifically, the Supreme Court has held that “begging” is protected speech (Village of Schaumburg v Citizens for a Better Envt., 444 US 620 [1980]), and defendant claims that this ordinance infringes on the freedom of speech by failing to limit the scope of prohibited actions to “aggressive” behavior. In other words, the ordinance is not sufficiently narrowly tailored.
Defendant also claims that the ordinance is overly broad because it affects “activities beyond its intended reach.” In fact, the overbreadth issue is related to the question of whether the subject regulation is narrowly tailored (see Grayned v City of Rockford, 408 US 104, 114-117 [1972]; People v Dupont, 107 AD2d 247, 255 [1985]; People v Duryea, 76 Misc 2d 948, 954-956 [1974], affd 44 AD2d 663 [1974]), so they will both be discussed in the section addressing constitutional concerns.
The last argument raised by defendant is that the ordinance is preempted by state law. Preemption occurs when an ordinance seeks to legislate within an area that the State has expressed an intent to exclusively monitor. According to defendant, this ordinance is preempted by title N of the Penal Law (Penal Law arts 240-245) which addresses the disruption of public order. The Staff Notes of the New York State Commission on Revision of the Penal Law and Criminal Code (reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376], art 250, at 387) state that, prior to 1965, “begging” and shouting were considered conduct creating public disorder. The Staff Notes went on to explain that “since none of these acts normally tends to provoke public disorder or a breach of the peace — an element of disorderly conduct — proper and successful prosecution therefore becomes extremely difficult if not legally *293 impossible in many instances.” The Penal Law was revised to contain statutes making harassment, menacing, trespass, disorderly conduct and loitering unlawful. It is defendant’s position that the definitions of “aggressive” under section 44-4 cover conduct that is almost identical to the conduct covered by the above-mentioned Penal Law statutes.
The People state that courts have permitted bans on solicitations so long as they are “content neutral and narrowly tailored to serve a significant governmental interest.” According to the People, the ordinance is content-neutral. It bans solicitations in certain public places, and all solicitations that are “aggressive,” regardless of whether they are made by a charity or an individual. “In any event, ‘the inquiry into content neutrality in the context of time, place or manner restrictions turns on the government’s justification for the regulation . . . The . . . ordinance should be upheld if it is narrowly tailored to achieve a significant governmental purpose and leaves open alternate channels of communication. ’ ” (Affirmation of James Nobles 1i 4, quoting Gresham v Peterson, 225 F3d 899, 905-906 [7th Cir 2000].)
In support of their position, the People cite Gresham v Peterson (225 F3d 899 [2000]). In Gresham, the court upheld an ordinance that completely banned panhandling between sunset and sunrise, as well as “aggressive” panhandling. It also outlawed panhandling from stopped or parked cars, and certain other specified areas, such as bus stops, ATMs, and bank entrances. While the court recognized that panhandling constituted speech protected by the First Amendment, it refused to strike down the ordinance. Even “protected solicitations . . . may be subject to time, place and manner restrictions, so long as they ‘are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.’ ” (Affirmation of James Nobles, quoting Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37, 45 [1983].) In this case, the People contend that the City of Rochester has a legitimate interest in ensuring the “public safety and order in promoting the free flow of traffic on public streets and sidewalks.” (Affirmation of James Nobles, quoting Madsen v Women’s Health Ctr., Inc., 512 US 753, 768 [1994].) According to the People, the ordinance allows for alternative channels of communication because it allows for solicitation in all other places outside the short list of locations specified.
With regard to preemption, the People claim that section 44-4 should not be invalidated merely because it has some relation to *294 the subject matter of title N. They cite a Court of Appeals case, New York State Club Assn. v City of New York (69 NY2d 211 [1987]), where the Court held that even though the state law had indicated an intent to legislate the field of antidiscrimination legislation, the challenged ordinance was not preempted because it filled in gaps left by state lawmakers (see New York State Club Assn. v City of New York, 69 NY2d at 219). The People argue that in this case section 44-4 serves a similar function.
Corporation Counsel for the City of Rochester has also submitted responding papers on this motion. The position of the City mirrors the position of the People.
II. Legal Analysis
A. Standing
Standing is a necessary starting point when examining any constitutional issue. The parties were asked to brief standing as the issue was not raised in any previously filed papers. Standing “is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court” (Broadrick v Oklahoma, 413 US 601, 610 [1973]). In other words, the general rule is that a person may only challenge a law that is unconstitutional as applied to them, and cannot challenge it “vicariously” (Broadrick v Oklahoma, 413 US at 610). An exception to this rule exists, however, in some cases where the constitutional challenge concerns the First Amendment. More particularly, the individual raising the First Amendment issue must allege that the law in question is overly broad and unconstitutional on its face. The Supreme Court has permitted litigants whose rights have not been personally violated by a law to attack that law on this ground “because of a judicial prediction or assumption that the statute’s very existence may cause others not before the court to refrain from constitutionally protected speech or expression” (Broadrick v Oklahoma, 413 US at 612; see Grayned v City of Rockford, 408 US 104 [1972]).
Defendant avers that he has both personal and vicarious standing to challenge section 44-4 (H). As the City noted in its papers, however, vicarious First Amendment challenges have limitations. The more closely tied a law is to regulating pure speech, as opposed to conduct, or imposing time, place and manner restrictions on communicative conduct, the more likely it is *295 that the court will apply the overbreadth standing doctrine (Broadrick v Oklahoma, 413 US at 612-613; People v Duryea, 76 Misc 2d 948, 955 [1974]). In this case, defendant raises two First Amendment arguments. The first claim is that section 44-4 (H) is overly broad because it imposes a total ban on non-aggressive solicitation of occupants of motor vehicles. Defendant obviously has personal standing to make this argument because solicitation of the occupants of motor vehicles is precisely what defendant is accused of. The second issue is that section 44-4 (H) is overly broad because it renders benign acts of solicitation by people standing on sidewalks or by the side of the road, which do not interfere with traffic or intimidate drivers, unlawful. Because defendant was actually standing in the roadway when he was arrested, this argument does not apply to his situation, only to others. While this challenge is vicarious, I find that it should be allowed to proceed under the overbreadth standing doctrine. As the following discussion will reveal, panhandling is considered speech not conduct, for First Amendment purposes, which is an appropriate circumstance to apply the exception to the general standing rule (see Broadrick v Oklahoma, supra).
B. The Ordinance Violates the Freedom of Speech Provisions of the State and Federal Constitutions
The Supreme Court has said that a state may “enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.” (Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37, 45 [1983].)
“The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys . . . The government’s purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others” (Ward v Rock Against Racism, 491 US 781, 791 [1989]; see Board of Mgrs. of Soho Intl. Arts Condominium v City of New York, 2004 WL 1982520, 2004 US Dist LEXIS 17807 [SD NY, Sept. 8, 2004]; Gresham v Peterson, 225 F3d at 905).
I find that because the Rochester ordinance does not impose a total ban on solicitations (contrast Hobbs v County of Westchester, *296 2002 WL 31873462, 2002 US Dist LEXIS 24569 [SD NY, Dec. 23, 2002]; Loper v New York City Police Dept., 999 F2d 699, 705 [1993]), and because I see no evidence that the City adopted this speech regulation “because of disagreement with the message it conveys,” that the ordinance is content-neutral (see Coalition for Humane Immigrant Rights of Los Angeles [CHIRLA] v Burke, 2000 WL 1481467, 2000 US Dist LEXIS 16520 [CD Cal, Sept. 12, 2000]; see also ACORN v City of Phoenix, 798 F2d 1260, 1267-1268 [1986]). The stated purpose of the ordinance is to “promote the health, safety and welfare of the citizens and visitors to the City” (Rochester City Code § 44-4 [A]), and nothing in the papers before me indicates otherwise.
The remaining questions in this analysis are whether the ordinance is narrowly tailored to serve a significant government interest, and whether it leaves open alternative means of communication. An ordinance is considered to be narrowly tailored “so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation” (Gresham v Peterson, 225 F3d at 906, quoting Ward v Rock Against Racism, 491 US 781, 799 [1989]). “The city has a legitimate interest in promoting the safety and convenience of its citizens on public streets” (Gresham v Peterson, 225 F3d at 906). A regulation does not have to be a “perfect fit” for the government’s needs. It just cannot burden more speech than necessary {Ward v Rock Against Racism, 491 US at 800). Nor does a time, place or manner restriction have to be the “least restrictive means of achieving the government purpose, so long as it can be considered narrowly tailored to that purpose” {Gresham v Peterson, 225 F3d at 906).
Defendant vicariously argues that the ordinance is overly broad in that a person passively sitting on the sidewalk with a sign saying “food” would be in violation of section 44-4 (H). Another example of overbreadth offered by defendant is the arrest of an individual standing on the side of the 490 west off ramp with a sign begging for money. After considering these examples, and the pertinent law, I agree with defendant that Rochester City Code § 44-4 (H) is not narrowly tailored and should be struck down for this reason.
In his reply papers, defendant relies upon CHIRLA v Burke (2000 WL 1481467, 2000 US Dist LEXIS 16520), a case out of Federal District Court in California. While this court is certainly not bound by the holding in CHIRLA {see People v Kin Kan, 78 NY2d 54, 60 [1991]), I find that court’s analysis of almost the *297 identical issue both legally sound, and correct as a matter of public policy. In CHIRLA, a section of the Los Angeles County Code was challenged on First Amendment grounds. That section read:
“It shall be unlawful for any person, while standing in any portion of the public right-of-way, including but not limited to public streets, highways, sidewalks and driveways, to solicit, or attempt to solicit, employment, business, or contributions of money or other property, from any person traveling in a vehicle along a public right-of-way, including, but not limited to, public streets, highways or driveways.” (Los Angeles County Code § 13.15.001.)
The court engaged in a forum analysis, and concluded that the ordinance could not withstand constitutional scrutiny because it was not narrowly tailored to achieve the governmental purpose. The stated governmental purpose was to promote the safety of motorists and pedestrians (including the solicitors) using public right-of-ways (see CHIRLA v Burke, supra). The court concluded that the sweep of the ordinance was so broad that it encompassed situations that did not fit within its governmental purpose. For example, the ordinance would render standing on a sidewalk, away from the side of the road, holding a sign asking passing motorists for work, a criminal act. There was no evidence submitted by the People indicating that this type of speech created any safety concerns (see CHIRLA v Burke, supra). Cases cited by the People (which included the key cases cited by either the People or Corporation Counsel in this case), where similar ordinances were upheld, were distinguished on the ground that the ordinances in those cases were not as broad. For example, the CHIRLA court noted that in International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge (876 F2d 494 [1989]) the challenged ordinance did not appear to prohibit solicitations from the sidewalk (see CHIRLA v Burke, supra). Also, while the ambiguously worded ordinance in ACORN v Phoenix (supra) was assumed (by the ACORN court itself) to apply to sidewalk solicitations, the court in CHIRLA recognized that “[i]n context, it is clear that the court was addressing ACORN’s face-to-face method of soliciting motorists while they were still in the flow of traffic and only temporarily stopped at a light.” (CHIRLA v Burke, 2000 WL 1481467, *5, 2000 US Dist LEXIS 16520, *15, supra.) As a result of this comparison, the CHIRLA court concluded that the ordinance in its case had a chilling effect on expressive behavior *298 that was not even directed toward motorists. For example, an individual soliciting a pedestrian on a public sidewalk could experience a reasonable fear that he or she might be prosecuted under the ordinance if the occupant of a passing car happened to see a sign asking for contributions displayed by him or her.
The ordinance in CHIRLA is very similar to the ordinance in this case, so it comes as no surprise that the troubling aspects of the regulations are the same. Since section 44-4 (H) was passed, people engaged in peaceful and nondisruptive requests for assistance have been criminally prosecuted in Rochester. Defendant offered a perfect example when he stated that a person standing on the sidewalk showing cars a sign bearing the word “food” runs the risk of being arrested. Not only does the ordinance violate First Amendment rights, it also threatens individuals engaged in nondisruptive solicitation with the possibility of incarceration. While the People and Corporation Counsel have alleged in their respective responses to this motion that aggressive panhandling is potentially distracting to drivers, insufficient explanation has been offered as to why non-aggressive solicitation would be more distracting than a billboard or storefront sign. The distinction between passive solicitation and aggressive solicitation has been recognized. “It is much easier to ignore a billboard or pedestrian along the roadway than an individual standing closely beside your car, peering in the window directly at you.” (ACORN v City of Phoenix, 798 F2d 1260, 1269 n 8.) While a time, place and manner restriction does not have to be a “perfect fit” or “the least restrictive means of achieving a government purpose,” I am unwilling to hold that an ordinance that allows for the prosecution of those who are guilty of nothing more than peacefully asking for assistance is “narrowly tailored.” (Gresham v Peterson, 225 F3d at 906.) An amendment to section 44-4 (H) would be appropriate. As written, however, this section is unconstitutional, and, therefore, invalid. Because the ordinance is being struck down for not being narrowly tailored, I see no need to address whether alternative means of communication exist or the preemption issue. The motion to dismiss is granted.