OPINION OF THE COURT
Alex R. Renzi, J.
*323 Background
In May of 2004 the City of Rochester added a new section to its Municipal Code specifically prohibiting various forms of aggressive panhandling in the city. Section 44-4 of the Municipal Code of the City of Rochester (the ordinance) was adopted to meet community concerns over the conduct of panhandlers and the negative effects that conduct was having on the city. The specific subdivision at issue in this case, subdivision (H) of Municipal Code § 44-4, reads as follows: “H. No person on a sidewalk or alongside a roadway shall solicit from any occupant of a motor vehicle that is on a street or other public place.”
Respondent/defendant Michael Barton was ticketed on August 4, 2004 by a member of the Rochester Police Department for violating section 44-4 (H) of the Municipal Code for allegedly walking into traffic on the inner loop exit ramp to Main Street and soliciting funds from passing motorists. Before trial, respondent moved to dismiss the accusatory instrument which charged him with aggressive panhandling on the ground that the subject ordinance was unconstitutional. Specifically, respondent argued that the statute was overbroad and not narrowly tailored and therefore did not pass constitutional muster.
The court below found that although the ordinance was content neutral, subdivision (H) was overbroad and not narrowly tailored sufficiently to pass constitutional muster. Accordingly, the charges pending against respondent were dismissed and this appeal followed.
For the following reasons this court disagrees with the court below and the matter is remanded for further proceedings. Discussion
It is undisputed that the ordinance at issue here incidentally burdens a First Amendment freedom. The court below held that although section 44-4 (H) burdens protected expressive activity, it was content neutral and reasonably related to a specific governmental interest. The court below did find, however, that section 44-4 (H) was overbroad and not narrowly tailored sufficiently to pass constitutional muster. In its analysis the court below cited two examples of persons affected by section 44-4 (H): a person passively sitting on the sidewalk with a sign saying “food,” and the individual standing on the side of the 490 west off-ramp with a sign begging for money. The court below indicated that it considered these examples, as well as the law it believed most pertinent to this issue, and held that the statute in question banned what it deemed to be both “aggressive” and *324 “passive” solicitation and as such was not narrowly tailored sufficiently to pass constitutional muster.
In its analysis, the court below relied heavily on the Coalition for Humane Immigrant Rights of Los Angeles v Burke (2000 WL 1481467, 2000 US Dist LEXIS 16520 [CD Cal 2000] [CHIRLA]), a federal District Court case out of California. In sum and substance, CHIRLA dealt with a section of the Los Angeles City Code that prohibited any person, while standing in any portion of a public right-of-way (streets, highways, sidewalks, driveways), to solicit or attempt to solicit employment, business or contributions of money or property from any person traveling in a vehicle along a public right-of-way. The CHIRLA court found that the ordinance was overly broad in that it prohibited certain acts of solicitation that had little to do with the ordinance’s stated purpose: promoting the safety of motorists and pedestrians using public right-of-ways. Likewise, the court below reasoned that certain acts of solicitation, specifically acts that the court categorized as “passive” forms of solicitation (much like the two examples referenced by the court below), did little to further the specified purpose of the statute and therefore the statute was not sufficiently narrowly tailored. Legal Analysis
1. Is the Ordinance Sufficiently Narrowly Tailored?
Panhandling implicates at least some expressive or communicative activity protected by the First Amendment. (Schaumburg v Citizens for a Better Environment, 444 US 620 [1980].) Public streets and sidewalks traditionally constitute public fora for the exercise of constitutional rights. However, “[e]ven protected speech is not equally permissible in all places and at all times.” (Cornelius v NAACP Legal Defense & Ed. Fund, Inc., 473 US 788, 799 [1985].)
Governmental regulations which incidentally burden First Amendment freedoms must pass a litany of tests to pass constitutional muster. Such regulations will be justified if they are “within the constitutional power of Government; if [they] further[ ] an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.” (United States v O’Brien, 391 US 367, 377 [1968].) The United States Supreme Court has further ruled that in traditional public fora such as streets and parks, as in the instant case, the test to be applied to governmental limitations upon expressive activity is as follows:
*325 “In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end . . . The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.” (Perry Ed. Assn. v Perry Local Educators’ Assn., 460 US 37, 45 [1983].)
Once a regulation is found to be content neutral, it must also be narrowly tailored to serve a significant governmental interest and must leave open ample alternative channels for communication in order to meet the time, place and manner standard set forth above in Perry. An ordinance is considered to be narrowly tailored “so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.” (Gresham v Peterson, 225 F3d 899, 906 [7th Cir 2000].)
A review of the legislative history of the statute reveals section 44-4 (H)’s primary purpose is to limit the interference that solicitation and panhandling pose on the free flow of pedestrian and vehicular traffic on streets and sidewalks in the City of Rochester. “The city has a legitimate interest in promoting the safety and convenience of its citizens on public streets.” (Gresham v Peterson, 225 F3d at 906.)
This court’s analysis begins with a brief review of similar cases around the nation. A similar question was decided in Gresham v Peterson (225 F3d 899 [7th Cir 2000]). In Gresham, the 7th Circuit Court of Appeals upheld an Indianapolis ordinance that limited street begging in public places and entirely prohibited “aggressive panhandling.” The statute in Gresham banned panhandling between sunset and sunrise, from stopped or parked cars, from specified areas such as bus stops, near sidewalk cafes, ATMs and bank entrances, and banned any panhandling in an “aggressive manner” (defined similar to section 44-4 [H]). The justification for the statute in Gresham was much the same as that given to justify section 44-4 (H). The Gresham court applied the time, place and manner standard set forth in Perry (supra), and held that the Indianapolis ordinance was content neutral, was sufficiently narrowly tailored, and left open ample alternative means of communication.
*326 The 11th Circuit Court of Appeals also tackled the issue of begging on a five-mile section of Fort Lauderdale beachfront and related areas in Smith v City of Fort Lauderdale, Fla. (177 F3d 954 [11th Cir 1999]). The City of Fort Lauderdale enacted rules regulating its city parks and beaches for the purpose of providing its citizens with a safe environment in which to pursue recreational activity. One of those regulations prohibited begging and/or panhandling on a five-mile strip of beach, its connecting sidewalk, and a nearby section of commercial sidewalk. The 11th Circuit Court of Appeals held that the Fort Lauderdale ordinance was sufficiently narrowly tailored to serve the significant government interest at stake and therefore did not violate free speech guarantees.
The 9th Circuit Court of Appeals held that a Phoenix statute prohibiting persons from standing on a street or highway soliciting contributions from occupants of any motor vehicle was narrowly tailored to meet its stated purpose. (Acorn v City of Phoenix, 798 F2d 1260 [9th Cir 1986].) Likewise, the 5th and 8th Circuit Courts have also addressed similar statutes and found them sufficiently narrowly tailored to serve the interests at stake. (Association of Community Orgs. for Reform Now v St. Louis County, 930 F2d 591 [8th Cir 1991]; International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge, 876 F2d 494 [5th Cir 1989].)
This court finds that the governmental interest at issue with regard to section 44-4 (H) of the Rochester ordinance, prohibiting interference with the free flow of vehicular traffic and promoting traffic safety, is a compelling interest and directly promoted by the regulation. While there exists some incidental burden on First Amendment freedoms here, the governmental interest at issue — prohibiting interference with the free flow of vehicular traffic and promoting traffic safety — is unrelated to this limited ban on free expression. Any incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. Moreover, as the court below correctly held, section 44-4 (H) does not impose a total ban on solicitations and there exists no evidence to suggest the regulation was adopted due to the content of the messages being conveyed. Therefore, this court agrees with the court below that the ordinance as written is content neutral.
Further, the ban on active solicitation — defined under the Rochester ordinance to include actions “in furtherance of the purposes of immediately obtaining money or any other thing of *327 value” (Municipal Code of City of Rochester § 44-4 [B])— contemplates only the immediate solicitation of motorists for money or something else of value. Such solicitation poses peculiar problems justifying a ban,
“because successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver.” (CHIRLA, 2000 WL 1481467, *5, 2000 US Dist LEXIS 16520, *16 [internal quotation marks omitted].)
The regulation at issue here is aimed only at solicitation from vehicles on the streets. The governmental interest in prohibiting interference with the free flow of vehicular traffic and promoting traffic safety is directly promoted by the regulation and would be achieved less effectively absent the regulation. It is the conduct itself that is directly prohibited here — words or acts of solicitation that could lead to an immediate response from persons occupying vehicles on the street.
More particularly, the conduct sought to be prohibited by the ordinance seemingly would of necessity involve the solicitor entering the street, approaching the car, conversing with the driver, and accepting a donation; another scenario would involve the driver stopping the car, exiting the car, walking on the street, meeting the solicitor, making a donation, reentering the street, entering the car, and driving off. Both scenarios, on their face, interfere with the free flow of traffic, and pose potential hazards to motorists and pedestrians.
While the court below distinguished between those forms of solicitation it deemed to be “passive” versus those forms it deemed “aggressive” in finding that section 44-4 (H) burdened more speech than absolutely necessary, this court declines to do the same. The solicitation banned under section 44-4 (H), words or acts deemed to immediately evoke a contribution from a passing motorist, are equally troublesome and problematic to the stated governmental purpose regardless of whether they are considered “passive” or “aggressive.” Those words or acts of solicitation deemed to immediately evoke a response that would interfere with the free flow of vehicular traffic present such a threat to vehicular and pedestrian safety that the City of Rochester is well within its authority to limit such activities in the interest of public safety. Therefore, this court holds, after a *328 careful review of the relevant case law and the parties’ respective arguments, that section 44-4 (H), as written, is sufficiently narrowly tailored to pass constitutional muster.
Finally, in order to be a valid time, place and manner regulation, the ordinance must leave open ample alternative channels for communication of the information. (Perry Ed. Assn. v Perry Local Educators’ Assn., 460 US 37, 45 [1983].) Section 44-4 (H) prohibits only the solicitation of funds from occupants of motor vehicles. Even the ordinance as a whole still allows for nonaggressive solicitation of funds, such as from pedestrians in most areas on the sidewalk, nor does it affect door-to-door solicitation of funds, telephone solicitation, or solicitation by mail. The ordinance also does not restrict other types of speech such as oral advocacy, distribution of literature, petitioning or picketing. The ordinance clearly leaves open ample alternative channels of communication and is fully consistent with established opinions in this area. (See Ward v Rock Against Racism, 491 US 781 [1989]; Hill v Colorado, 530 US 703 [2000]; Heffron v International Soc. for Krishna Consciousness, Inc., 452 US 640 [1981].)
2. Is the Ordinance Overbroad?
The court below found the city ordinance to be overbroad because it unconstitutionally restricts the exercise of First Amendment rights by others. Overbreadth challenges are not favored by courts, particularly where conduct and not merely pure speech is involved. Facial overbreadth challenges are an exception to the general rule to be used only when the over-breadth is substantial. Mere allegations of possible applications to others is not enough, particularly when the law clearly applies to the person charged. The Supreme Court set forth in Broadrick v Oklahoma (413 US 601, 615-616 [1973]) just how limited this exception is:
“It remains a ‘matter of no little difficulty’ to determine when a law may properly be held void on its face and when ‘such summary action’ is inappropriate. Coates v. Cincinnati, 402 U. S. 611, 617 (1971) (opinion of Black, J.). But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from ‘pure speech’ toward conduct and that con *329 duct — even if expressive — falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect — at best a prediction — cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U. S. 165, 174-175 (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep. It is our view that section 818 is not substantially over-broad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.”
“Only a statute that is substantially overbroad may be invalidated on its face.” (Houston v Hill, 482 US 451, 458 [1987].) In addressing such a facial overbreadth challenge, a court’s first task is to ascertain whether the enactment reaches a substantial amount of constitutionally protected conduct. (Boos v Barry, 485 US 312, 329 [1988].) “[Particularly where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute’s plainly legitimate sweep.” (Broadrick v Oklahoma, 413 US 601, 615 [1973].) “[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when ‘judged in relation to the statute’s plainly legitimate sweep.’ ” (Chicago v Morales, 527 US 41, 52 [1999], quoting Broadrick, 413 US at 615.) In a case in which a similar ordinance was upheld prohibiting solicitation from persons in vehicles, an overbreadth challenge was found inappropriate in International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge (876 F2d 494, 499-500 [5th Cir 1989]).
Defendant challenged section 44-4 (H) as being overbroad because it impacts not only his activities in soliciting contribu *330 tions from occupants of motor vehicles, but also applies to all others who may seek charitable contributions from vehicle occupants, including such recognized charitable organizations as the Salvation Army. Because a statute is evenhanded and applies equally to all persons conducting the same unwanted conduct does not make a statute overbroad.
Here, the comprehensiveness of the statute is a virtue, not a vice, because it is evidence against there being a discriminatory governmental motive. As we have observed, “there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally.” (Hill v Colorado, 530 US 703, 731 [2000].)
The conduct involved here, “the approaching of vehicles on the street for a contribution,” does not reach a substantial amount of constitutionally protected conduct, if any. While solicitation itself may have some protection, there is not a constitutional right to stop cars in the street in order to solicit contributions from their occupants. When conduct, and not pure speech or, more importantly, viewpoint, is involved, the overbreadth doctrine should be used “sparingly and only as a last resort.” (Broadrick, 413 US at 613.) In prohibiting a solicitation, section 44-4 (H) requires a person to be on a sidewalk or alongside a roadway, and to use spoken or written words or acts, for the purpose of immediately obtaining money or any other thing of value from an occupant of a motor vehicle that is on a street or other public place. A specific type of solicitation, which has specific consequences for persons in motor vehicles on the streets, is therefore prohibited in this section. Not prohibited are other types of solicitation, including solicitation which is not aimed at occupants of motor vehicles, or solicitation which is not for the purposes of immediately obtaining money or any other thing of value.
The facial overbreadth remedy is one which should be used sparingly by the courts. The ordinance at issue here is aimed specifically at a certain type of conduct engaged in at a certain location. The overbreadth, if any, is not substantial when judged in relation to the ordinance’s plainly legitimate sweep. As a result, the overbreadth argument in this instance must fail.
*331 Decision
For the previously stated reasons, this court finds section 44-4 (H) of the Municipal Code of the City of Rochester constitutional and remands this matter back to Rochester City Court for further proceedings not inconsistent with this opinion.