OPINION OF THE COURT
Ellen M. Yacknin, J.
*561 Introduction
Since 1791, when the United States Congress ratified the First Amendment to the United States Constitution, tension has existed between a community’s desire to limit uncomfortable and unpalatable speech by individuals and an individual’s right to express his or her thoughts in public, however distasteful those expressions might be to others. That tension is evident in the issue presented by this criminal action: namely, whether a local government may constitutionally bar a person on a public sidewalk from holding a sign asking for help.
Background
Like many cities, Rochester, New York, has a number of inhabitants who regularly approach others for financial handouts. Perceiving this conduct to be a detriment to the community’s quality of life, Rochester’s City Council adopted the Aggressive Panhandling Act in May 2004. (See Rochester City Code § 44-4 [“Aggressive panhandling”].) Persons can be arrested and jailed pending arraignment for alleged violations of the act. Upon a conviction, a person can be fined between $25 and $250. For a second conviction within a year, a person can be jailed for up to 15 days. (See Rochester City Code § 44-4 [I].)
Subdivision (H) of the Aggressive Panhandling Act provides, “No person on a sidewalk or alongside a roadway shall solicit from any occupant of a motor vehicle that is on a street or other public place.” (Rochester City Code § 44-4 [H].) On April 25, 2006, defendant Kevin Griswold was arrested, charged with violating this provision and taken into custody.
A bench trial was conducted on May 10, 2006. Following the People’s case, defendant moved to dismiss the charge, inter alia, on the ground that Rochester City Code § 44-4 (H) is unconstitutional as applied to defendant. The court reserved decision.
Facts
According to the trial evidence, at about 4:30 p.m. on April 25, 2006, defendant Kevin Griswold stood on the sidewalk on Brown Street near Broad Street in Rochester, New York, facing traffic and holding a handwritten sign. The sign read, “Homeless. Hungry. Please Help.”
There was no evidence that defendant approached or initiated any conversations with any pedestrians. There was no evidence that defendant approached or initiated any conversations with any motorists or passengers in vehicles. There was no evidence that defendant impeded any pedestrian or vehicular traffic. Defendant simply stood silently on the sidewalk with his sign in his hands.
*562 While driving his patrol car, Rochester Police Officer Donald Flood noticed defendant as he held his sign. Police Officer Flood pulled his car over to defendant and motioned for defendant to approach him. When defendant complied, Police Officer Flood read defendant’s sign and arrested him for violating Rochester’s Aggressive Panhandling Act. At that point Police Officer Flood gave defendant his Miranda rights, handcuffed him, and took him into custody.
Legal Analysis
The issue facing this court is whether Rochester’s Aggressive Panhandling Act, as applied to defendant, violates his federal or state constitutional rights.[1] For the reasons set forth below, this court holds that the act, as applied, unconstitutionally burdens defendant’s right to expression of speech.[2]
Both the First Amendment to the United States Constitution and article I, § 8 of the New York State Constitution sharply curtail a government’s authority to restrict the expression of speech. It is indisputable that begging is a form of expressive conduct or communicative activity that implicates a person’s federal and state constitutional free speech rights. (See Schaumburg v Citizens for a Better Environment, 444 US 620, 632 [1980]; Loper v New York City Police Dept., 999 F2d 699, 704 [2d Cir 1993].) It is likewise indisputable that a public sidewalk, *563 like that where defendant was standing, is a “quintessential public forum” that has “ ‘immemorially been held in trust for the use of the public.’ ” (Perry Ed. Assn. v Perry Local Educators’ Assn., 460 US 37, 45 [1983], quoting Hague v Committee for Industrial Organization, 307 US 496, 515 [1939]; Loper, 999 F2d at 704.) Thus, Rochester’s right to bar defendant from holding his sign while standing silently on a public sidewalk is constitutionally circumscribed. (See United States v Grace, 461 US 171, 177 [1983]; Perry Ed. Assn., 460 US at 45; Loper, 999 F2d at 703.)
When a government wishes to restrict the expression of speech in a traditional public forum, it may not prohibit all communicative activity. Rather, a government restriction on speech in a public forum passes federal constitutional muster only if: (1) a restriction that is content based is necessary to serve a compelling state interest and is narrowly tailored to achieve that end; or (2) a restriction that is content neutral regulates only the time, place and manner of expression, is narrowly tailored to serve significant government interests, and leaves open alternate channels of communication. (See Perry Ed. Assn., 460 US at 45; Loper, 999 F2d at 703.)
Besides the First Amendment to the United States Constitution, article I, § 8 of the New York State Constitution protects the expression of speech. New York’s constitutional safeguards for speech are far broader than those provided by the First Amendment. (See People ex rel. Arcara v Cloud Books, 68 NY2d 553, 557-558 [1986]; Time Sq. Books v City of Rochester, 223 AD2d 270, 273-274 [4th Dept 1996].) When examining a New York ordinance that limits speech, therefore, a court must be mindful of the special protections afforded to speech under the New York State Constitution.
I. Rochester’s Aggressive Panhandling Act is Arguably Content Based; However, the Issue Need Not be Decided in this Case
Under First Amendment analysis, whether a law is content based or content neutral must generally be determined because the constitutional test applied to content based laws is stricter than that applied to content neutral laws. A content based law is presumptively invalid, and is subject to strict scrutiny. (See Los Angeles v Alameda Books, Inc., 535 US 425, 434 [2002].) Specifically, a content based law is constitutionally valid only if it is necessary to serve a compelling state interest and is narrowly tailored to achieve that end. (See Perry Ed. Assn., 460 US at 45; Loper, 999 F2d at 703.) The principal inquiry for *564 determining whether a law is content based is “whether the government has adopted a regulation of speech because of disagreement with the message it conveys.” (Ward v Rock Against Racism, 491 US 781, 791 [1989]; see Hobbs v County of Westchester, 397 F3d 133, 149 [2d Cir 2005], cert denied 546 US —, 126 S Ct 340 [2005].)
Rochester’s Aggressive Panhandling Act bars any “person on a sidewalk or alongside a roadway” from “soliciting] from any occupant of a motor vehicle that is on a street or other public place.” (Rochester City Code § 44-4 [H].) The act defines the term “solicit” to include: “without limitation, the spoken, written, or printed word or such other acts or bodily gestures as are conducted in furtherance of the purposes of immediately obtaining money or any other thing of value.” (Rochester City Code § 44-4 [B].) Thus, the only speech that Rochester City Code § 44-4 (H) limits is speech that seeks “money or any other thing of value” immediately. Speech that is expressed for any other purpose, including other kinds of solicitations, is not restricted.
In People v Barton (8 Misc 3d 291, 295-296 [Rochester City Ct 2004], revd 12 Misc 3d 322, 327 [Monroe County Ct 2006], lv granted 6 NY3d 892 [2006]), both the trial court and the reviewing County Court concluded that the Aggressive Panhandling Act was content neutral. In their analyses, however, neither Barton court took into account that unlike other antisolicitation laws that courts have construed to be content neutral,[3] section 44-4 (H) does not restrict solicitations of all kinds. Instead, it restricts speech that is made only for “purposes of immediately obtaining money or any other thing of value.” In short, it restricts only “panhandling” speech.
That section 44-4 (H) does not criminalize other kinds of soliciting speech, such as speech made for the purpose of selling goods or services, is evident from the ordinance’s legislative intent clause as well as its name, the “Aggressive Panhandling” *565 Act. (See Rochester City Code § 44-4 [A].) Indeed, the County Court in People v Barton readily acknowledged that the Aggressive Panhandling Act targets only a single type of solicitation: panhandling. As the County Court observed, “Not prohibited [by the Aggressive Panhandling Act] are other types of solicitation, including . . . solicitation which is not for the purposes of immediately obtaining money or any other thing of value.” (12 Misc 3d 322, 330 [2006].)
Given the act’s explicit focus on a single message, there is a compelling argument that the Aggressive Panhandling Act targets the content of the message conveyed, thereby rendering it a content based restriction.[4] (See, e.g., Simon & Schuster, Inc. v Members of N. Y. State Crime Victims Bd., 502 US 105, 116 [1991] [law requiring income from a criminal’s works describing the crime to be made available to the criminal’s victims and creditors is content based].) For that reason, in analyzing the constitutionality of an antisoliciting law analogous to Rochester’s Aggressive Panhandling Act, Massachusetts’ high court concluded that the law was content based. According to the court, the statute that criminalized “communicative activity that asks for direct, charitable aid for the beggar” was content based because the “content of the individual’s message determines criminal guilt or innocence.” (Benefit v City of Cambridge, 424 Mass 918, 924, 679 NE2d 184, 188, 189 [1997].) Likewise, the Second Circuit Court of Appeals found that an ordinance that prohibited loitering for the purpose of soliciting funds was content based because “it prohibits all speech related to begging.” (Loper, 999 F2d at 705; see also Hill v Colorado, 530 US 703, 723 [2000] [“a statute that restricts certain categories of speech . . . lends itself to invidious use if there is a significant number of communications, raising the same problem that the statute was enacted to solve, that fall outside the statute’s scope, while others fall inside”]; cf. Gresham v Peterson, 225 F3d 899, 905-906 [7th Cir 2000] [although “colorable argument” could be made that ordinance targeting panhandling was content based, it was unnecessary to resolve the issue because the parties stipulated that the ordinance was content neutral].)
The New York Court of Appeals has taken a parallel approach in determining whether a restriction on speech is content *566 neutral or content based. For example, in People v Foley (94 NY2d 668, 682 [2000]), the Court held that a law proscribing the computerized dissemination of “sexually oriented” communications to minors was content based because sexually explicit communication is directly affected by the statute.
Whether the Aggressive Panhandling Act is content based or content neutral is a question that a different court may need to resolve. In this case, however, because the court finds that the Aggressive Panhandling Act is unconstitutional as applied to defendant under both the federal and state constitutional tests germane to content neutral speech restrictions, it is unnecessary for this court to resolve this issue. (See e.g. Time Sq. Books v City of Rochester, 223 AD2d at 275 [given the Court’s analysis, the Appellate Division, Fourth Department, had no reason to decide whether ordinance targeted at “adult entertainment” businesses was content neutral or content based]; see Los Angeles Alliance For Survival v City of Los Angeles, 157 F3d 1162 [9th Cir 1998] [question of whether a Los Angeles ordinance restricting both solicitation and sales in public is content based or content neutral should be answered by the California Supreme Court].)[5]
II. As Applied To Defendant, Rochester’s Aggressive Panhandling Act is Unconstitutional Because it is Not Narrowly Tailored to Serve Rochester’s Substantial Governmental Interests
As indicated above, a content neutral restriction on speech is constitutionally permissible under the First Amendment if it is narrowly tailored to serve significant government interests and leaves open alternate channels of communication. (See Perry Ed. Assn., 460 US at 45; Loper, 999 F2d at 703.) The applicable test to determine whether a content neutral ordinance is narrowly tailored is whether it “promotes a substantial government interest that would be achieved less effectively absent the regulation.” (Ward v Rock Against Racism, 491 US at 799.) In other words, “the regulation need not be a perfect fit for the *567 government’s needs, but cannot burden substantially more speech than necessary” to achieve the government’s legitimate substantial interests. (Gresham v Peterson, 225 F3d 899, 906 [7th Cir 2000]; see Ward v Rock Against Racism, 491 US at 797.)
Significantly, when a person’s First Amendment speech rights are at stake, it is the government’s burden to demonstrate that “the interest served justifies the restriction imposed.” (Deegan v City of Ithaca, 444 F3d 135, 142 [2d Cir 2006].) Therefore, it is the government’s obligation to prove that prohibiting defendant from holding his sign while standing on the street does not burden substantially more speech than necessary to achieve the city’s legitimate substantial interests.
The City of Rochester’s interests in adopting the Aggressive Panhandling Act are delineated in the act’s legislative intent provision. In sum, the act was enacted to protect pedestrians and motorists from panhandlers’ intimidating or harassing behavior, to keep public places safe, and to provide for the free flow of pedestrian and vehicular traffic. (See Rochester City Code § 44-4 [A].) These municipal interests encompass legitimate and substantial government interests. (See Madsen v Women’s Health Center, Inc., 512 US 753, 768 [1994]; Gresham v Peterson, 225 F3d at 906.) As described by the act’s legislative intent clause, uninvited and aggressive begging can amount to intimidation and harassment, as well as an invasion of privacy. A pedestrian whom a beggar approaches without invitation and solicits for money might feel threatened. Likewise, a panhandler who walks into the road, approaches cars, and asks the occupants for money poses a safety risk because the vehicles must slow down or swerve to avoid hitting the individual. (See Association of Community Orgs. for Reform Now v St. Louis County, 930 F2d 591, 596 [1991].)
In stark contrast, neither defendant’s handwritten sign nor his conduct in this case embrace any of these potentially unsafe or unwanted behaviors. Neither his conduct nor his written sign was, or could be perceived to be, intimidating, harassing, threatening, or potentially dangerous to the flow of pedestrian or vehicular traffic. Defendant was merely standing on the sidewalk, passively and silently, holding a handwritten sign that said simply, “Homeless. Hungry. Please Help.”
The trial record is devoid of any evidence that pedestrian or vehicular traffic flow was impeded by defendant’s written communication to passersby. The record is devoid of any evidence *568 that defendant intimidated, harassed, or threatened any passerby with his written communication. The record is devoid of any evidence that any passerby who wanted to ignore defendant was unable to do so. Stated differently, the record is utterly devoid of any evidence that defendant’s method of communicating his message impinged on any of Rochester’s legitimate and substantial governmental interests. Consequently, the government has failed to meet its burden of showing that the Aggressive Panhandling Act, as applied to defendant, is narrowly tailored to serve Rochester’s substantial interests.[6]
The government has likewise failed to satisfy its burden of showing that its legitimate interests “would be achieved less effectively” if it did not prohibit a person from standing on the sidewalk holding a sign that solicits charitable assistance. (Ward v Rock Against Racism, 491 US at 799.) The People failed to show a link, let alone a causal link, between a person holding a solicitation sign while standing or sitting on the sidewalk and the intimidation of passersby or the disruption of traffic flow.
To the contrary, the City has tacitly acknowledged in other contexts, by both its words and actions, that permitting defendant to hold his sign on the sidewalk would not impair the City’s ability to achieve its legitimate interests effectively. For example, shortly after the Aggressive Panhandling Act was adopted, an Assistant City Attorney stated publicly that the ordinance did not prohibit city firefighters from soliciting passing motorists for financial contributions for a charitable agency “as long as [they] didn’t enter streets, weren’t aggressive and didn’t solicit near certain prohibited areas such as ATMs, bus stops and parking garages.” (R. Armon, Fill the Boot Drive Gets Cold Feet, Rochester Democrat and Chronicle, Aug. 28, 2004, at 1B.)
Similarly, since the trial in this case was held, the court has observed solicitors on Rochester’s sidewalks with signs soliciting the sale of the local newspaper, soliciting the sale of flowers, soliciting passersby to shop at various businesses, and, on Flag Day, soliciting donations in exchange for American flag pins. *569 Several city sidewalks have newspaper and magazine distribution boxes so that pedestrians and motorists can stop and obtain periodicals without going into a store. Scattered throughout Rochester are several United States Postal Service and private business mailboxes located on sidewalks near the curbs. These mailboxes are strategically placed to enable motorists to drive up to the curb, exit their cars, and walk to the front of the mailboxes to deposit their mail. During the summer, several hot dog and hamburger carts are located on the city sidewalks close to the curb so that the vendors can sell lunch to both pedestrian and motorist passersby.
Rochester itself has carts with the signs “Downtown Information” and “Downtown Guides” on several downtown sidewalk locations that invite both pedestrian and motorist passersby to stop to ask the “Downtown Guide” questions or to obtain written information about the city. Real estate agencies throughout Rochester often place written information boxes in the front of houses that are for sale so that pedestrian and motorist passersby can stop and take the available literature. As they did before the adoption of the Aggressive Panhandling Act, during the holiday season, Salvation Army volunteers stand on city sidewalks during the holiday season and solicit donations from pedestrian and motorist passersby. (See G. Livadas, Salvation Army Workers Ring in the Holiday Season, Rochester Democrat and Chronicle, Nov. 26, 2004, at 1B.)
Clearly, if there were demonstrable evidence that serious adverse consequences to traffic flow occur when motorists pull up to a curb in response to people on sidewalks with signs, all such sign-holding would have been banned. (See Loper, 999 F2d at 705 [“If (the ordinance advanced substantial government interests), the State would not allow, as it does, the solicitation of contributions on city streets by individuals who represent charitable organizations (under) N.Y. Exec. Law § 172”].) Rochester, however, did not do so. Instead, the City’s Aggressive Panhandling Act bars only panhandlers like defendant from standing on sidewalks with signs that solicit help.
Insofar as Rochester’s Aggressive Panhandling Act criminalizes defendant’s expression of protected speech in this case, therefore, the provision is unconstitutional as applied to him because it burdens substantially more speech than necessary to achieve Rochester’s legitimate substantial interests, and because Rochester’s legitimate interests would not be served less effectively absent the prohibition. Stated differently, as applied to *570 defendant, section 44-4 (H) violates the First Amendment because it is not narrowly tailored to meet Rochester’s legitimate and substantial objectives of preventing unsafe and threatening speech and maintaining traffic flow. (See Perry v Los Angeles Police Dept., 121 F3d 1365, 1369-1370 [9th Cir 1997] [ordinance that bars sales and solicitations on a boardwalk, except for sales of printed materials, sales by nonprofit groups, and donation solicitations by nonprofit groups is not narrowly tailored to serve the city’s legitimate interests in aiding traffic flow and protecting merchants from unfair competition]; Deegan v City of Ithaca, 444 F3d at 144 [city ordinance prohibiting sound heard a specified distance from its source was unconstitutional as applied to preacher on public commons where ordinance was not narrowly tailored to meet city’s legitimate interest in controlling noise, and could not be justified where similar speech activities regularly occurred on the commons]; Coalition for Human Immigrant Rights of Los Angeles v Burke, 2000 WL 1481467, *8-9, 2000 US Dist LEXIS 16520, *21-31 [CD Cal 2000] [ordinance banning solicitations from passing motorists, including people on sidewalks holding signs, is unconstitutional because it burdens speech that was not shown to cause harm to traffic flow or safety];[7] Loper, 999 F2d at 704-705 [ordinance that targets begging only advances no substantial and important governmental interests]; Acorn v City of New Orleans, 606 F Supp 16, 23-24 [ED La 1984] [ordinance banning solicitations from the road or “neutral ground” in the road not sufficiently narrowly tailored]; see also Benefit v City of Cambridge, 424 Mass at 922, 926-927, 679 NE2d at 187, 190 [license requirement for panhandlers is unconstitutional].)
The majority of decisions holding that antisolicitation laws do not violate the First Amendment are not inconsistent with the court’s decision in this case. The antisolicitation laws analyzed in those cases differ from Rochester’s Aggressive Panhandling Act in two critical ways. First, the laws do not restrict *571 panhandling only; rather, they impose limits on a range of solicitation activities. (See e.g. Association of Community Orgs. for Reform Now v St. Louis County, 930 F2d at 593 [restriction on solicitations for rides, employment, charitable contributions, or business]; Acorn v City of Phoenix, 798 F2d 1260, 1262 [9th Cir 1986] [restriction on solicitations for employment, business, or contributions]; International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge, 876 F2d 494, 497 [5th Cir 1989] [restriction on solicitations for employment, business or charities “of any kind”].)
Second, the antisolicitation laws that other courts have found to be constitutional did not prohibit a person, such as defendant, from standing on a sidewalk, facing motorists and holding up a sign asking for a handout. In fact, some courts implied that had such speech been restricted, the law’s constitutionality might have been doubtful. (See e.g. Gresham v Peterson, 225 F3d at 903, 907 [antiaggressive panhandling ordinance allows beggars to hold up signs asking for money]; Association of Community Orgs. for Reform Now v St. Louis County, 930 F2d at 594 [antisolicitation ordinance “does not forbid solicitors from soliciting drivers as long as they stand ... on the curb, median or shoulder of the road”]; Acorn v City of Phoenix, 798 F2d at 1262 [antisolicitation ordinance prohibits solicitations from people standing in street or highway];[8] International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge, 876 F2d at 495-496 [antisolicitation ordinance prohibits solicitations of motorists while standing in roadways or streets].)
In contrast to these ordinances, Rochester’s Aggressive Panhandling Act criminalizes only certain panhandling speech, and does not exempt a person standing on a sidewalk with a sign from its proscriptions. Under these circumstances, as applied to defendant, the act violates the free speech protections guaranteed by the First Amendment.
III. As Applied to Defendant, the Aggressive Panhandling Act is Unconstitutional Under the New York State Constitution Because the Government Has Failed to Demonstrate That it is No Broader than Needed to Achieve Its Legitimate Purpose
Even if the Aggressive Panhandling Act survives federal First Amendment analysis, it does not pass scrutiny under New York *572 State’s constitutional free speech provision. The New York Court of Appeals has emphasized that article I, § 8 of the New York Constitution compels the application of a more rigorous test to determine the constitutionality of a governmental restriction on speech than that required by the First Amendment. (See People ex rel. Arcara v Cloud Books, 68 NY2d at 557-558; Time Sq. Books v City of Rochester, 223 AD2d at 274.) In particular, when analyzing the state constitutionality of a “government[al] regulation designed to carry out a legitimate and important State objective [that] incidentally burden[s] free expression, the government’s action cannot be sustained unless the State can prove that it is no broader than needed to achieve its purpose.” (Time Sq. Books v City of Rochester, 223 AD2d at 276, quoting People ex rel. Arcara v Cloud Books, 68 NY2d at 558.)
Undeniably, Rochester has a legitimate interest in protecting pedestrians and motorists from unwanted harassment and intimidation. Rochester also has a legitimate interest in maintaining pedestrian and traffic flow. In this case, however, Rochester has failed to show that barring defendant from silently holding up a sign asking for help while standing on a sidewalk is necessary to achieve any of these legitimate purposes.
As discussed above, the People presented no evidence at trial that a person who stands silently on the sidewalk holding a solicitation sign threatens or intimidates passing pedestrians or motorists. The People presented no evidence that such a person unreasonably blocks pedestrian or traffic flow. Nor did the People present any evidence that defendant harassed, threatened or intimidated pedestrians or motorists, or that he obstructed pedestrian or traffic flow.
Because the Aggressive Panhandling Act does not prohibit other types of solicitation speech, it is unlikely that evidence exists that demonstrates that prohibiting defendant’s solicitation speech is necessary to achieve a legitimate purpose. Nonetheless, it is evident that the People have failed to meet their burden of producing such evidence in this case. Under these circumstances, the Aggressive Panhandling Act is unconstitutional as applied to defendant.
IV New York State Law Does Not Preempt Rochester’s Aggressive Panhandling Act
Regardless of the ordinance’s constitutionality, defendant argues that the Aggressive Panhandling Act is void because it is *573 preempted by New York State law. Specifically, according to defendant, Rochester City Code § 44-4 is preempted by Penal Law, title N, article 240. The court disagrees.
Where the State has expressly or implicitly evidenced its intent to legislate exclusively in an area, or where a local ordinance plainly conflicts with state law, a local ordinance is preempted by state law and therefore void. (See Matter of Cohen v Board of Appeals of Vil. of Saddle Rock, 100 NY2d 395, 399-400 [2003].) Penal Law title N criminalizes several types of conduct that New York State considers to be detrimental to the public order. While Rochester’s Aggressive Panhandling Act criminalizes conduct that is similar to some types of conduct prohibited by Penal Law § 240.00 et seq., it criminalizes additional conduct that Rochester believes is harmful to the city’s public order.
Such similarity, however, does not demonstrate that the State intended Penal Law, title N, article 240 to be an exhaustive regulatory scheme encompassing all possible types of offenses against the public order. Nor is there any conflict between any of the violations and crimes set forth in Penal Law, title N, article 240 and Rochester City Code § 44-4. Thus, Rochester’s Aggressive Panhandling Act is not preempted by New York State law. (See People v Stagnitto, 261 AD2d 890, 891 [4th Dept 1999] [Rochester City Code provision prohibiting possession of an assault weapon not preempted by Penal Law article 265, which regulates firearms and other dangerous weapons].)
Conclusion
Rochester, like other municipalities, is entitled to pass ordinances that criminalize behavior that disrupts the community’s public order and safety. When such ordinances affect the expression of speech, however, they must be crafted with extreme care to ensure that everyone’s speech, whether that of a millionaire or a beggar, is constitutionally safeguarded. For the reasons discussed above, Rochester’s Aggressive Panhandling Act, as applied to defendant, fails to do so. Accordingly, defendant’s motion for a trial order of dismissal is granted, and the People’s information charging defendant with violating the Aggressive Panhandling Act is dismissed.

. A facial constitutional challenge to a governmental restriction requires a court “to examine the words of the statute on a cold page and without reference to the defendant’s conduct.” (People v Stuart, 100 NY2d 412, 421 [2003].) In contrast, an “as applied” challenge requires a court “to consider whether a statute can be constitutionally applied to the defendant under the facts of the case.” (Id.)

. The defendant in People v Barton (8 Misc 3d 291 [Rochester City Ct 2004], revd 12 Misc 3d 322 [Monroe County Ct 2006], lv granted 6 NY3d 892 [2006]) was charged with violating the Aggressive Panhandling Act when he walked into the street traffic on a highway exit ramp and begged for money from passing motorists. (See 12 Misc 3d at 323.) Reversing the trial court, the County Court held that the act does not, on its face, violate free speech protections under the First Amendment to the United States Constitution. On May 12, 2006, the New York Court of Appeals granted defendant Barton leave to appeal from the decision.
Barton is not controlling in this case for at least two reasons. First, it did not involve a challenge to the Aggressive Panhandling Act as applied to a person who, like defendant, was arrested for standing passively on a public sidewalk with a sign in his hands. Second, the Barton decision did not consider whether the greater free speech protections provided by the New York State Constitution render the act unconstitutional notwithstanding applicable federal constitutional standards. Thus, this court must analyze the Aggressive Panhandling Act in light of defendant’s specific actions and both federal and state constitutional doctrine.

. For example, the antisolicitation laws examined in cases such as Association of Community Orgs. for Reform Now v St. Louis County (930 F2d 591, 594 [8th Cir 1991]), International Socy. for Krishna Consciousness of New Orleans, Inc. v City of Baton Rouge (876 F2d 494, 497 [5th Cir 1989]), Acorn v City of Phoenix (798 F2d 1260, 1267-1268 [9th Cir 1986]), and Sun-Sentinel Co. v City of Hollywood (274 F Supp 2d 1323, 1329 [SD Fla 2003]) were found to be content neutral because they limited solicitations for all purposes, including business and charitable purposes; they did not limit only one form of solicitation. In other cases such as Gresham v Peterson (225 F3d 899, 905-906 [7th Cir 2000]) and Smith v City of Fort Lauderdale, Fla. (177 F3d 954, 956 [11th Cir 1999]) the parties stipulated that the antisolicitation laws under review were content neutral.

. As explained by Supreme Court Justice Kennedy, “whether a statute is content neutral or content based is something that can be determined on the face of it; if the statute describes speech by content then it is content based.” (Los Angeles v Alameda Books, Inc., 535 US 425, 448 [2002] [Kennedy, J., concurring].)

. In response to the Ninth Circuit’s certified question, the California Supreme Court held that the ordinance restricting the sale of goods and services as well as solicitations for immediate donations was content neutral. (See Los Angeles Alliance for Survival v City of Los Angeles, 22 Cal 4th 352, 993 P2d 334 [2000].) Following the California Supreme Court’s ruling, the Ninth Circuit nonetheless granted plaintiffs’ motion for a preliminary injunction to enjoin the implementation of the antisolicitation ordinance. (See Los Angeles Alliance for Survival v City of Los Angeles, 224 F3d 1076 [9th Cir 2000].)

. At trial, the People presented only brief testimony describing defendant’s actions. Following the trial in this case, the court gave the parties an opportunity to submit further argument. Only defendant’s attorney filed a memorandum of law. After the trial, the court also invited the City of Rochester to submit documentation regarding the constitutionality of Rochester City Code § 44-4 (H) as applied to defendant. In response, the City simply gave the court a copy of the brief it had submitted to the County Court in People v Barton. That brief did not address the issues raised by the specific facts in this case.

. Unlike the Aggressive Panhandling Act, the Coalition for Human Immigrant Rights of Los Angeles ordinance banned solicitations, offers, and sales of all sorts. (Coalition for Human Immigrant Rights of Los Angeles v Burke, 2000 WL 1481467 at *1, 2000 US Dist LEXIS 16520 at *1-4 [CD Cal 2000].) According to the court, the ordinance banned “even a solicitor on the sidewalk with a sign” asking for work, yet “there is no evidence upon which the County could have inferred that this type of passive solicitation creates the type of traffic congestion or safety concerns [the ordinance] sought to ameliorate.” (Coalition for Human Immigrant Rights of Los Angeles, 2000 WL 1481467 at *6, 2000 US Dist LEXIS 16520 at *19 [CD Cal 2000].)

. The Phoenix court emphasized that because of the “substantial differences in nature between a street . . . and a sidewalk . . . courts have recognized a greater governmental interest in regulating the use of city streets” than in regulating the use of city sidewalks. (Acorn v City of Phoenix, 798 F2d at 1267.)